1  **Catherine Valerio Barrad (SBN 168897)**
    **cbarrad@sidley.com**
2  **Alycia A. Degen (SBN 211350)**
    **adegen@sidley.com**
3  **SIDLEY AUSTIN LLP**
    **555 West Fifth Street, Suite 4000**
4  **Los Angeles, California 90013-1010**
    **Telephone: (213) 896-6000**
5  **Facsimile: (213) 896-6600**

6  **Attorneys for Takeda Pharmaceuticals**
    **America, Inc. and Eli Lilly and Company**

7

8              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA

9                    **CV12-04856 JFW (PLAx)**

10  GARY BERNOR; WILLIAM JR.           Case No. _____
    BUNTIN; ROGELIO SANCHEZ; and
11  JADINE SURETTE, individually and on
    behalf of all others similarly situated,
12
                 Plaintiffs,
13
14        vs.                          **NOTICE OF REMOVAL OF**
                                        **ACTION UNDER 28 U.S.C.**
                                        **§ 1441; DECLARATION OF**
15  TAKEDA PHARMACEUTICALS              **CATHERINE VALERIO**
    AMERICA, INC., and ELI LILLY &     **BARRAD**
16  COMPANY, and DOES 1-100, inclusive,
                                        Complaint Filed:  April 18, 2012
17               Defendants.

18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT,**

2  **CENTRAL DISTRICT OF CALIFORNIA:**

3      **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and

4  1446, as amended in relevant part by the Class Action Fairness Act of 2005,

5  defendant Eli Lilly and Company ("Eli Lilly") hereby removes to this Court the

6  above-styled putative class action, pending as Case No. BC482676 in the Superior

7  Court of the State of California for the County of Los Angeles (the "State Court

8  Action"). Eli Lilly believes that all of Plaintiffs' claims are without merit, and will

9  dispute them at the appropriate time, but for purposes of removal respectfully states

10  as follows:

**The State Court Action**

11

12      1.    On or about April 18, 2012, plaintiffs Gary Bernor, William Jr.

13  Buntin, Rogelio Sanchez, and Jadine Surrett ("Plaintiffs") filed the State Court

14  Action in the Superior Court of the State of California, County of Los Angeles.

15  Plaintiffs purport to represent a putative class of "[a]ll consumers who have been

16  prescribed and purchased or paid, in part or all, of the purchase price other than for

17  resale of the prescription drug Actos in the state of California since 1999."

18  (Compl. ¶ 43.)

19      2.    The allegations in the Complaint relate to the prescription medication

20  Actos®. Plaintiffs allege that they and all consumers who were prescribed and

21  purchased Actos® in the State of California suffered economic loss in that they

22  would not have paid for the medication had they known that its risks outweighed

23  its benefits. (*E.g.*, *id.* ¶¶ 7-8.) They seek complete restitution of all revenue,

24  profits, compensation or other benefits that Eli Lilly and co-defendant Takeda

25  Pharmaceuticals America, Inc. received from their allegedly unjust sale of Actos®,

26  as well as other damages and equitable relief. (*Id.* pp. 24-25.)

27      3.    As set forth more fully below, this case is properly removed to the

28  United States District Court for the Central District of California pursuant to the

-1-

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because the procedural requirements for removal are satisfied: this lawsuit is a class action in which there is minimal diversity of citizenship, the amount of controversy exceeds $5 million, and this Notice of Removal has been filed within thirty days of service of the summons and complaint upon Eli Lilly.

## The Procedural Requirements for Removal are Satisfied

4.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all summons, process, pleadings, and orders filed in the State Court Action are attached as Exhibit A to the Declaration of Catherine Valerio Barrad.

5.     Plaintiffs' Complaint was filed in the Superior Court of the State of California for the County of Los Angeles on or about April 18, 2012. (*See* Exhibit A.)  The Complaint was served on Takeda Pharmaceuticals America, Inc. on May 1, 2012, and on Eli Lilly on May 4, 2012. (*Id.*)  Eli Lilly filed this Notice of Removal on June 4, 2012, making it timely under 28 U.S.C. § 1446(b) (providing that each defendant has 30 days from the date of service to remove).

6.     Takeda Pharmaceuticals America, Inc. joins in and consents to this removal.  Consent by the Fictitious Defendants ("Does 1-100") is not required. *See United Computer Sys. v. AT&T*, 298 F.3d 756, 762 (9th Cir. 2002); *see also* 28 U.S.C. § 1441(a).  Therefore, all properly joined and served defendants join in and consent to removal.  *See* 28 U.S.C. § 1446(b).

7.     The United States District Court for the Central District of California embraces the locality in which the State Court Action is now pending, making this Court a proper forum pursuant to 28 U.S.C. § 1441(a).[1]

8.     No previous application has been made for the relief requested.

---

[1] Following removal, Eli Lilly will file a Notice of Potential Tag-Along Action pursuant to Rule 7.1(A) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to have this matter transferred to *In re: Actos (Pioglitazone) Products Liability Litigation*, MDL Docket No. 2299, before the Honorable Rebecca F. Doherty in the Western District of Louisiana.

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

9.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs' counsel, and a copy is being filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, along with a Notice of Filing of this Notice of Removal.

10.     If any question arises regarding the propriety of the removal of this action, Eli Lilly respectfully requests the opportunity to present oral argument in support of its position that this case is removable under CAFA.

## Federal Jurisdiction Exists Under the Class Action Fairness Act

11.     Federal jurisdiction exists under CAFA because this is a class action in which there is minimal diversity of citizenship between the parties, the putative class encompasses more than 100 plaintiffs, and the amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

### There is Minimal Diversity of Citizenship

12.     Plaintiffs Gary Bernor, William Jr. Buntin, Rogelio Sanchez, and Jadine Surrett are alleged to be citizens and residents of the State of California. (Compl. ¶¶ 10-13.)

13.     Defendant Eli Lilly is an Indiana corporation with its principal place of business in Indianapolis, Indiana. (*See id.* ¶ 35.) Thus, for diversity purposes, it is a citizen of Indiana. *See* 28 U.S.C. § 1332(c)(1).

14.     Defendant Takeda Pharmaceuticals America, Inc. is a Delaware corporation with its principal place of business in Deerfield, Illinois. (*See* Compl. ¶ 15.) Thus, for diversity purposes, it is a citizen of Delaware and Illinois. *See* 28 U.S.C. § 1332(c)(1).[2]

---

[2] Plaintiffs' complaint includes only Eli Lilly, Takeda Pharmaceuticals America, Inc., and the Doe defendants as defendants in the caption, and Eli Lilly and Takeda Pharmaceuticals America, Inc. are the only two entities who have been served. (*See* Exhibit A.) Similarly, Eli Lilly and Takeda Pharmaceuticals America, Inc. are the only entities identified as "defendants" in the body of plaintiffs' complaint. (*See* Exhibit A, Compl. ¶ 1.) Still, the complaint references other Takeda entities as "parties," including Takeda Pharmaceuticals North America, Inc. (now known as Takeda Pharmaceuticals U.S.A., Inc.), Takeda Pharmaceutical Company Limited, and Takeda California, Inc. (*Id.* ¶¶ 20-34.) Even if properly classified as

-3-

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

15.    The citizenship of the Doe defendants is immaterial, as "the citizenship of defendants sued under fictitious names [is] disregarded" for purposes of removal. *See* 28 U.S.C. § 1441(a).

16.    Because Plaintiffs are citizens of a state different from the named defendants, the minimal diversity requirement of CAFA is met and removal is appropriate. *Id.* § 1332(d)(2)(A).

<u>The Putative Class Exceeds 100 Plaintiffs</u>

17.    Plaintiffs' Complaint includes far more than the requisite 100 putative class members. (Compl. ¶ 44 ("While the exact number of class members is unknown to plaintiffs at this time, Plaintiffs believe that there are thousands of proposed class members.").)   Indeed, Plaintiffs' Complaint includes as members of the putative class *any* consumer who was prescribed and purchased or paid for Actos in the State of California at any time between 1999 and the present. (*Id.* ¶ 43.)

<u>The Amount In Controversy Exceeds $5 Million</u>

18.    Based on the allegations of the Complaint, the aggregate amount in controversy for purposes of determining CAFA jurisdiction exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

19.    Plaintiffs assert three statutory causes of action on behalf of the putative class under California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*), Unfair Competition Law (Cal. Civ. Code § 17200 *et seq.*), and

---

defendants, and they are not, none of these entities has been served and, therefore, their consent is not required for removal. *See Inglis v. D.R. Horton, Inc.*, No. 08 CV 1825, 2008 WL 4997611, at *1 n.1 (S.D. Cal. Nov. 24, 2008).   Moreover, their residence does not defeat the minimal diversity that is required under CAFA.  *See* 28 U.S.C. § 1332(d)(2).  Takeda Pharmaceuticals U.S.A., Inc. is a Delaware corporation with its principal place of business in Illinois, Takeda Pharmaceutical Company Limited is a Japanese corporation with its principal place of business in Japan, and Takeda California, Inc. is a Delaware corporation with its principal place of business in California. (*See* Exhibit A, Compl. ¶¶ 20, 25, 30.)  Although Takeda California, Inc. is a California resident, CAFA only requires that one plaintiff be diverse from one defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

1     Consumer Legal Remedies Act (Cal. Bus. & Prof. Code § 1750 *et seq.*). (Compl.

2     ¶¶ 102-142.) In addition, Plaintiffs assert a common law claim for unjust

3     enrichment. (*Id.* ¶¶ 143-150.) Based on these claims, Plaintiffs seek, on behalf of

4     themselves and the putative class: (1) restitution of all revenues, earnings, and

5     compensation from the sale of Actos in the State of California, (2) attorneys' fees,

6     (3) pre- and post-judgment interest, and (4) other relief that the Court may deem

7     appropriate. (*Id.* pp. 24-25.)

8         20.    The Complaint describes the alleged damages and grounds for

9     restitution as "[Plaintiffs'] payments for Actos and the amounts by which

10     Defendants were unjustly enriched." (*Id.* ¶ 8.) From the face of the Complaint, it

11     is clear that the amount in controversy exceeds $5 million. Indeed, Plaintiffs argue

12     that defendants gained "millions of dollars in profits in the State of California that

13     would not have been gained but for Defendants' deceptive acts and omissions."

14     (*Id.* ¶ 145; *see also id.* ¶¶ 3 (noting $2.63 billion in sales of Actos® in 2010) and

15     86 (arguing that global Actos® sales amounted to $4.8 billion in the last year.)

16     Plaintiffs thus allege that they are entitled to an award of all revenue from these

17     "millions of dollars" in sales of Actos®, clearly establishing an alleged amount in

18     controversy in excess of $5 million. (*Id.* ¶ 145.) Moreover, as set forth in the

19     declaration of Audrey Nicoll, co-defendant Takeda has received revenue in excess

20     of $5 million from the sale of Actos® in the State of California during the alleged

21     class period (July 1999 to the present). (*See* Declaration of Audrey Nicoll ¶ 3,

22     attached as Exhibit B to Declaration of Catherine Valerio Barrad.) Again, this is

23     the exact same revenue that Plaintiffs now seek to disgorge via their class action

24     lawsuit. (*See, e.g.,* Compl. ¶¶ 7-8.)

25         21.    Plaintiffs also seek attorneys' fees, costs, and "other relief." (*Id.* pp.

26     24-25.) Where, as here, a party alleges that a statute authorizes attorneys' fees, a

27     reasonable estimate of likely fees in the event of success on the merits counts

28     toward the amount in controversy requirement. *See Galt G/S v. JSS Scandinavia,*

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

1   142 F.3d 1150, 1155-56 (9th Cir. 1988); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.

2   Supp. 2d 1004 (N.D. Cal. 2002).  Given plaintiffs' allegation that their expected

3   damages are in the "millions" (Compl. ¶ 145), their expected request for attorneys'

4   fees, if successful, is likely to be significant, and the amount of expected damages

5   and fees would far exceed the $5 million minimum under CAFA.

6       22.    Based on the allegations of the Complaint and the declaration of

7   Audrey K. Nicoll, Eli Lilly clearly has met its burden of establishing an amount in

8   controversy of $5 million, exclusive of interest and costs, and this case may be

9   removed pursuant to CAFA. *See Lewis v. Verizon Comms., Inc.*, 627 F.3d 395,

10  400-401 (9th Cir. 2010) (vacating District Court's remand order and holding that

11  defendants' affidavit, in combination with allegations set forth in plaintiffs'

12  complaint, satisfied the amount-in-controversy requirement under CAFA).

13

14      **WHEREFORE**, Eli Lilly respectfully requests that the Court assume full

15  jurisdiction over this action as if Plaintiffs had originally filed their claims in this

16  Court.

17  DATED:  June 4, 2012           Respectfully submitted,

18                                 SIDLEY AUSTIN LLP

19                                 By: _____

20                                 Catherine Valerio Barrad

21                                 Attorneys for Defendants Eli Lilly and
                                   Company and Takeda Pharmaceuticals
22                                 America, Inc.

-6-

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

1    **DECLARATION OF CATHERINE VALERIO BARRAD**

2    I, CATHERINE VALERIO BARRAD, declare as follows:

3          1.     I am an attorney at law licensed to practice in the State of California

4    and before the United States District Court for the Central District of California. I

5    am a partner in the law firm of Sidley Austin LLP, counsel of record for Defendants

6    Eli Lilly and Company and Takeda Pharmaceuticals America, Inc. in this action.

7    The matters set forth below are within my personal knowledge, and if called upon

8    as a witness, I could and would testify competently as to each of them.

9          2.     Attached as Exhibit A is a true and correct copy of the Summons,

10   Complaint, Answer, and other filings in the State Court Action, styled as *Gary*

11   *Bernor, et al. v. Takeda Pharmaceuticals America, Inc., et al.*, Case No. BC

12   482676, that was filed in the Superior Court of the State of California, County of

13   Los Angeles.

14         3.     Attached as Exhibit B is a true and correct copy of the Declaration of

15   Audrey K. Nicoll, Associate Director, Accounting at Takeda Pharmaceuticals

16   U.S.A., Inc., which is the parent corporation of Takeda Pharmaceuticals America,

17   Inc.

18        I declare under penalty of perjury under the laws of the United States of

19   America that the foregoing is true and correct. Executed on the 4th day of June,

20   2012, in Los Angeles, California.

21

22   _____
                 Catherine Valerio Barrad

23

24

25

26

27

28

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441**

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

CONFORMED COPY
FILED
Los Angeles Superior Court

APR 18 2012

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
DOROTHY SWAIN

**NOTICE TO DEFENDANT:** TAKEDA PHARMACEUTICALS AMERICA,
**(AVISO AL DEMANDADO):** INC. and ELI LILLY & COMPANY, and
DOES 1-100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** GARY BERNOR; WILLIAM
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** JR. BUNTIN; ROGELIO
SANCHEZ; and JADINE SURETTE, individually, and on
behalf of all others similarly situated.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California's Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):

**CASE NUMBER:**
(Número del Caso): BC482676

LOS ANGELES SUPERIOR COURT
111 N. Hill Street
same as above
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
J. Paul Sizemore, #254981                    (310) 322-9800  (310) 322-8811
Laurie Kamerrer, #281137
SIZEMORE LAW FIRM, PLC.
2101 Rosecrans Avenue, Suite 5290, El Segundo, CA 90245

DATE: APR 18 2012   John _____  Clerk, by _____ , Deputy
(Fecha)                         (Secretario)        D.M.      (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☑ on behalf of (specify): TAKEDA PHARMACEUTICALS AMERICA, INC.

   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

Legal
Solutions
Plus

Page 1 of 1

1    J. Paul Sizemore (SBN: 254981)
     Jeffrey C. Bogert (SBN: 132778)
2    Laurie Kamerrer (SBN: 281137)
     **SIZEMORE LAW FIRM**
3    2101 Rosecrans Ave. Suite 5290
     El Segundo, CA 90245
4    Telephone: (310) 322-8800
     Facsimile: (310) 322-8811
5

6    Attorneys for Plaintiffs

7

8

9

**CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court**

**APR 18 2012**

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
DOROTHY SWAIN

10    SUPERIOR COURT OF THE STATE OF CALIFORNIA

     FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| GARY BERNOR; WILLIAM JR. BUNTIN; ROGELIO SANCHEZ; and JADINE SURETTE, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>     vs.<br><br>TAKEDA PHARMACEUTICALS AMERICA, INC. and ELI LILLY & COMPANY, and DOES 1-100, Inclusive,<br><br>              Defendants | Case No.<br><br>**CLASS ACTION** BC482676<br><br>**COMPLAINT & DEMAND FOR JURY TRIAL:**<br><br>(1) Violations of California Consumers Legal Remedies Act;<br>(2) Violations of California Unfair Competition Law;<br>(3) Violations of California False Advertising Law; &<br>(4) Unjust Enrichment |

<u>**CLASS ACTION COMPLAINT**</u>

     1.      Plaintiffs Gary Bernor, William Jr. Buntin, Rogelio Sanchez, and Jadine Surette (referred to herein as "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action for damages and equitable relief against Defendants Takeda Pharmaceuticals America, Inc., Eli Lilly & Company and DOES 1 through 100, Inclusive (hereinafter, "Defendants") based on personal knowledge and upon the information and belief and the investigation and research of counsel.

1<br>COMPLAINT

**EXHIBIT A
PAGE 9**

# INTRODUCTION

2.      This action is brought as a class action under the provisions of the California Code of Civil Procedure section 382.   Plaintiffs and the proposed Class members have been prescribed and purchased or paid for part, or all, of the purchase price of the prescription drug Actos® (generically referred to as pioglitazone), marketed and promoted by Defendants.

3.      Actos was approved by the Food and Drug Administration ("FDA") on July 16, 1999 as an oral treatment for Type II diabetes, also known as non-insulin-dependent diabetes mellitus ("NIDDM") or adult-onset diabetes. Actos became one of the top selling drugs in the world.  Millions of individuals in the United States have used Actos. The 2010 sales for Actos reached an excess of $2.63 billion.

4.      When considering whether a drug is efficacious in assisting diabetic patients in meeting their glycemic targets, both glycemic control *and* the risk factor reductions (including reduction in serious side effects) should be considered.[1]

5.      Ultimately, when considering glycemic control *and* risk factors associated with Actos, Actos is not efficacious for diabetic patients such as Plaintiffs as the drug's risk factors increases the diabetic patients' risk for, among other things, bladder cancer, congestive heart failure, and other cardiovascular adverse effects.  Therefore, Actos has little to no health benefit to Plaintiffs and the proposed Class.

6.      Despite knowing the serious risk factors associated with Actos, and in efforts to increase the sales of Actos, Defendants embarked on a comprehensive and carefully-orchestrated scheme to promote Actos' safety, efficacy and effectiveness through a fraudulent and deceptive marketing program to Plaintiffs, physicians, and the public. Plaintiffs and the proposed Class were among the principal victims of Defendants' wrongful scheme to promote and market Actos.

\ \ \

---

[1] Transcript from *Joint Meeting of the Endocrinologic and Metabolic Drugs Advisory Committee and the Drug Safety Management Advisory Committee*, Dep't of Health and human Services Food and Drug Administration Center for Drug Evaluation and Research (CDER) (July 30, 2007) (testimony by Robert E. Ratner, M.D.) at 43.

EXHIBIT___A___
PAGE _____10___

7.      Defendants' conduct, as described herein, caused Plaintiffs' injuries and damages because Plaintiffs and the proposed Class paid for the high cost of this inefficacious and dangerous drug, including co-payments.  Plaintiffs and the proposed Class were required to pay more for Actos than other alternative treatments available on their respective health plans because of Defendants' deceptive schemes.  Based on the misinformation disseminated by Defendants in making their decision to pay for Actos, Plaintiffs and the Class have been directly harmed by their economic loss.

8.      This is a proposed Class action on behalf of all consumers residing in the State of California, who have been prescribed and purchased or paid, in part or all, the purchase price for Actos.  On information and belief, Plaintiffs allege the Class to be sufficiently numerous to make joinder of all members impossible.  Common questions of law and fact exist, and Plaintiffs' claims are typical of those of other Class members in that they are individuals who were prescribed and paid for, at least in part, Actos for the treatment of Type II diabetes.

9.      Plaintiffs seek recovery for their payments for Actos and the amounts by which Defendants were unjustly enriched on behalf of a California State class.

**PARTIES**

10.      Plaintiff, Gary Bernor is a resident of the State of California whose principal residence is in Hesperia, within the County of San Bernardino.  Mr. Bernor was prescribed and used Actos from 2005 through 2009.  Mr. Bernor was diagnosed with bladder cancer in early 2007.

11.      Plaintiff, William Buntin Jr. is a resident of the State of California whose principal residence is in Yuba City, within the County of Sutter.  Mr. Buntin was prescribed and used Actos from 2006 through 2011.  Mr. Buntin was diagnosed with bladder cancer on November 16, 2011.

12.      Plaintiff, Rogelio Sanchez is a resident of the State of California whose principal residence is in Santa Maria, within the County of Santa Barbara.  Mr. Sanchez was prescribed and used Actos from 2007 through 2011.  Mr. Sanchez was diagnosed with bladder cancer in late 2010.

3
COMPLAINT

EXHIBIT   A
PAGE    11

13.     Plaintiff, Jadine Surette is a resident of the State of California whose principal residence is in Los Angeles, within the County of Los Angeles. Ms. Surette was prescribed and used Actos from 2003 through February 2011. Ms. Surette was diagnosed with bladder cancer on February 18, 2009.

14.     The true names and capacities, whether individual, corporate or otherwise of the defendants named in this Complaint as Does 1 through 100, inclusive, are unknown to Plaintiffs at this time. Plaintiffs are informed and believe, and on that basis allege, that each of said fictitiously named defendants are liable to Plaintiffs on the causes of action herein alleged, and/or assert some interest, legal or equitable, in the subject matter of this action, and therefore Plaintiffs sue these presently unidentified defendants by said fictitious names. Plaintiffs will move to amend this Complaint when the true names and capacities of said fictitiously named defendants are ascertained.

15.     Takeda Pharmaceuticals America, Inc. (hereinafter "Takeda America") is a Delaware Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, IL 60015.

16.     Takeda America is a wholly owned subsidiary of Takeda Pharmaceuticals North America.

17.     Takeda America has transacted and conducted business within the State of California.

18.     Takeda America has derived substantial revenue from goods and products used in the State of California.

19.     Takeda America expected or should have expected its acts to have consequences with the State of California, and derived substantial revenue from California state commerce.

20.     Takeda Pharmaceuticals North America is a Delaware corporation, which has its principal place of business at One Takeda Parkway, Deerfield, IL 60015.

21.     Takeda Pharmaceuticals North America is a wholly owned subsidiary of Takeda Limited.

\ \ \

EXHIBIT    A
PAGE    12

22.     Takeda Pharmaceuticals North America has transacted and conducted business within the State of California.

23.     Takeda Pharmaceuticals North America has derived substantial revenue from goods and products used in the State of California.

24.     Takeda Pharmaceuticals North America expected or should have expected its acts to have consequences within the State of California and derived substantial revenue from California state commerce.

25.     Takeda California, Inc. is a Delaware corporation, which has its principal place of business at 10410 Science Center Drive San Diego, CA 92121.

26.     Takeda California is a wholly owned subsidiary of Takeda Limited. Takeda California is the corporation that resulted with the merger of Takeda San Diego, Inc. and Takeda San Francisco, Inc.

27.     Takeda California, f/k/a Takeda San Diego, Inc. and Takeda San Francisco, Inc. has transacted and conducted business within the State of California and continues to do so.

28.     Takeda California, f/k/a Takeda San Diego, Inc. and Takeda San Francisco, Inc., has derived substantial revenue from goods and products used in the State of California.

29.     Takeda California and its predecessors, Takeda San Diego, Inc. and Takeda San Francisco, Inc. expected or should have expected its acts to have consequences with the State of California, and derived and continue to derive substantial revenue from interstate commerce.

30.     Takeda Limited is a foreign corporation with its principal place of business located at 1-1, Doshomachi 4-chome, Cho-ku, Osaka, 540-8645, Japan.

31.     Takeda Limited is the parent company of Takeda North America, and Takeda America is wholly owned subsidiary of Takeda North America.

32.     Takeda Limited has transacted and conducted business within the State of California.

EXHIBIT    A
PAGE     13

33.     Takeda Limited has derived substantial revenue from goods and products used in the State of California.

34.     Takeda Limited expected or should have expected its acts to have consequences within the State of California, and derived substantial revenue from interstate commerce.

35.     Eli Lilly & Company (Hereinafter "Lilly") is an Indiana corporation with its principal place of business located at Lilly Corporate Center, Indianapolis, Indiana 46285.

36.     Lilly has transacted and conducted business within the State of California.

37.     Lilly has derived substantial revenue from the goods and products used in the State of California.

38.     Lilly expected or should have expected its acts to have consequences within the State of California, and derived substantial revenue from California state commerce.

### JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction over this action because each Plaintiff purchased and used Actos in the State of California, each Plaintiff resides in the State of California, and Defendants marketed and promoted Actos in the State of California. This Court also has subject matter jurisdiction by virtue of the fact that each Plaintiff suffered injury in the state of California.

40.     This Court has personal jurisdiction over the parties because Plaintiffs have consented to the jurisdiction of this Court and Defendants are authorized to do business, and in fact do business in this state, and otherwise intentionally avail themselves of the markets in this state through the distribution, promotion, marketing and sale of Actos in this state.  Therefore the exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

\\\

\\\

\\\

6
COMPLAINT

EXHIBIT  A
PAGE  14

41.     Venue is proper in the Superior Court of Los Angeles because Plaintiff Jadine Surette's claims arise within this county and local rules require that all proposed class actions be filed in the Central District.   Defendants also conduct business with consumers in this county and have caused injury to residents in this county and this state. Venue is additionally proper in the Superior Court of Los Angeles because Plaintiffs' assert claims under the Consumer Legal Remedies Act.   In actions brought under the Consumer Legal Remedies Act, a special venue provision applies that allows the action to be brought in the county where the transaction occurred.   Civ. Code. § 1780(d).   Plaintiff Jadine Surette purchased Actos in this county, was injured in this county, and resides in this county, therefore venue is proper in this county.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this suit on their own behalf and on behalf of all persons similarly situated.   Such a representative action is necessary to prevent and remedy the deceptive, unlawful and unfair practices alleged herein.

43.     This action is brought and may be properly maintained as a class action pursuant to the provisions of Code of Civil Procedure section 382.   Plaintiffs bring this action on behalf of themselves and all members of the class, defined as follows:

All consumers who have been prescribed and purchased or paid, in part or all, of the purchase price other than for resale of the prescription drug Actos in California since July 1999.

Excluded from the proposed class are defendants; any entities in which any of the defendants have a controlling interest; and the officers, directors, affiliates, attorneys, heirs, predecessors and successors in interest, subsidiaries, employees, agents and/or assigns of any of the defendants.

44.     The members of the class are so numerous that joinder of all members is impracticable.   While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are thousands of proposed class members.

\\\

\\\

7

COMPLAINT

EXHIBIT   A
PAGE   15

45.     There is a well-defined community of interest among the members of the proposed class.  Plaintiffs, like all other members of the class, were prescribed and purchased or paid, in part or all, of the purchase price of the dangerous and ineffective Actos in the State of California.  Due to Defendants' actions and inactions, Plaintiffs, like all other members of the class, were led to believe that Actos was safe and effective, resulting in the unjust enrichment of Defendants.  The factual bases of Defendants' misconduct are common to all members of the class and represent a common practice of wrongful conduct resulting in damages to all members of the class.

46.     There are numerous questions of law and fact common to Plaintiffs and the members of the class and those questions predominate over any questions that may affect individual members of the class.  These include, but are not limited to, the following:

(a) Whether Actos was created and designed with defects that increase patients' risk of adverse events;

(b) Whether Defendants knowingly failed to disclose, misrepresented, and/or failed to warn of Actos' defects with the intent that others rely upon such concealment, suppression or omission;

(c) Whether Defendants' acts and omissions violate California State consumer protection laws;

(d) Whether Defendants made material misrepresentations of fact, or omitted to state material facts to the Class members regarding the risk of bladder cancer, congestive heart failure, and other cardiovascular adverse events associated with Actos use, and if such misrepresentations or omissions operate as a deceit upon the Class;

(e) Whether the Class has been damaged, and if so, the extent of such damages and/or the nature of the equitable relief, compensatory or statutory damages to which the Class is entitled; and

(f) Whether Defendants were and are unjustly enriched by their acts and omissions, at the expense of the Class.

8
COMPLAINT

EXHIBIT___A___
PAGE ____16____

47.     Conversely, the only individual question affecting Class members is the precise amount each Class member overpaid to Defendants.  Thus, the common questions predominate over any questions affecting only individual members.

48.     Plaintiffs' claims are typical of the claims of other members of the class. Plaintiffs and all the members of the class have sustained economic damages arising out of the common course of conduct as alleged herein.

49.     Plaintiffs will fairly and adequately represent and protect the interests of the class.  They have retained counsel with experience in consumer class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources necessary to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the class.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual joinder of all members of the class is impracticable.  Also, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them.  The cost to the court system of such individual adjudication would be substantial.  Individualized litigation would additionally present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of identical factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each individual class member.

## FACTUAL ALLEGATIONS

### Development of Actos and Defendants' Collaboration

51.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Actos, for the treatment of type II diabetes mellitus.

\\\

9<br>COMPLAINT

EXHIBIT  A
PAGE    17

52.     According to the American Diabetes Association, type II diabetes is the most common form of diabetes.  Type II diabetes develops when the body does not produce enough insulin or does not efficiently use the insulin that it produces.

53.     Actos was jointly launched by Takeda North America and Eli Lilly in 1999.

54.     Actos was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat type II diabetes.

55.     Actos is a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZD"s).

56.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda North America and Lilly to promote and market Actos.

57.     Takeda Limited described this partnership as "a great success" and "mutually beneficial to both companies."

58.     Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, Actos is only used to treat type II diabetes and should not be used to treat type I diabetes.

59.     Actos is sold as a single ingredient product under the brand name Actos.

60.     Actos is sold in combination with metformin (Actosplus Met, Actosplus Met XR) and in combination with glimepiride (Duetact).

61.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos, including all Plaintiffs, were exposed to increased risk for developing bladder cancer.  Also as a result of the defective nature of Actos, persons who were prescribed and ingested Actos were exposed to increased risk for developing congestive heart failure, and other cardiovascular adverse events.

62.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos, including Plaintiffs, developed bladder cancer, and have suffered and may continue to suffer from bladder cancer.  Also as a result of the defective nature of Actos, persons who were prescribed and ingested Actos experienced congestive heart

10
COMPLAINT

EXHIBIT____A____
PAGE ____18____

1    failure and other cardiovascular adverse events, and have suffered and may continue to
2    suffer from congestive heart failure and other cardiovascular adverse events.

3         63.    Defendants concealed and continue to conceal their knowledge that Actos
4    can cause bladder cancer and congestive heart failure, and other cardiovascular adverse
5    events from Plaintiffs, Plaintiffs' physicians, other consumers, and the medical
6    community.

7         64.    As a result of Defendants' actions and inaction, Plaintiffs were injured due
8    to the ingestion of Actos, which caused and will continue to cause Plaintiffs various
9    economic injuries and damages, including payments for an ineffective and dangerous
10   product.

11        65.    Further, as a result of Defendants' actions and inactions, Plaintiffs were
12   prescribed and used Actos, a product that was ultimately not efficacious for diabetic
13   persons given the drug's risk factors and the patient's increased risk for bladder cancer
14   and congestive heart failure, and other cardiovascular adverse events.   Therefore,
15   Defendants were unjustly enriched at Plaintiffs' expenses by their deceptive acts and
16   omissions.

**Takeda's PROactive Study**

17        66.    Prior to Actos being approved by the FDA, a two-year carcinogenicity
18   study was conducted on male and female rats.  Drug-induced tumors were observed in
19   male rats receiving doses of Actos in a range equivalent to human therapeutic doses.

20        67.    In 2005, the results of the PROactive (**PRO**spective pioglit**A**zone Clinical
21   Trial In macro**Va**cscular Events) three-year study were published.    PROactive
22   prospectively looked at the impact in total mortality and macrovascular morbidity using
23   Actos. Dormandy J.A., *et al. Secondary Prevention of Macrovascular Events in Patients*
24   *with Type 2 Diabetes in the PROactive Study (***PRO***spective pioglitAzone Clinical Trial In*
25   *macroVacscular Events): a Randomised Controlled Trial,* Lancet, 266:1279-1289 (2005).

26        68.    The PROactive study was sponsored by Takeda's European research and
27   development center and Eli Lilly.  The intent of the study was to demonstrate that
28   treatment with Actos lowered the risk of adverse cardiovascular events and outcomes in

EXHIBIT  A
PAGE    19

1  high risk patients.

2      69.      However, in monitoring the adverse events during the study, researchers

3  and Defendants became aware of a statistically significant increased incidence of bladder

4  cancer in patients receiving Actos as compared to patients receiving comparator drugs.

5      70.      The authors of the PROactive study minimized the significance of these

6  findings, however.

7      71.      A three-year liver safety study was also performed, and according to the

8  FDA, that study also demonstrated a higher percentage of bladder cancer cases in patients

9  receiving Actos versus comparators.

**Food and Drug Administration Review**

10      72.      On September 17, 2010, the FDA issued a Safety Announcement stating it

11  was undertaking a review of the interim data from the ongoing ten year Kaiser

12  Permanente study Takeda was conducting at the FDA's request to evaluate the association

13  between Actos and bladder cancer.  The planned five-year interim analysis demonstrated

14  that the risk of bladder cancer increases with increasing dose and duration of Actos use,

15  reaching statistical significance after twenty-four months.

16      73.      In a shocking spin on words, despite the FDA finding that Actos is linked

17  to a statistically significant increase in the risk for developing bladder cancer, Robert

18  Spanheimer, Vice President of Medical and Scientific Affairs of Takeda, claimed to

19  Reuters that the Kaiser Permanente study has not shown a risk to patients of bladder

20  cancer or other cancers from Actos.

21      74.      In early 2011, the American Diabetes Association published *Assessing the*

22  *Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event*

23  *Reporting*, Piccinni, *et al.* Diabetes Care, 34:1369-1371 (June 2011), published ahead of

24  print April 22, 2011.  This study looked at adverse events reports made to FDA between

25  2004 and 2009.  The conclusion of that study was that "[i]n agreement with preclinical

26  and clinical studies, AERS analysis is consistent with an association between pioglitazone

27  and bladder cancer.  This issue needs constant epidemiologic surveillance and urgent

28  definition by more specific studies."

EXHIBIT   A

PAGE   20

**Suspension of Actos in France**

75.    On June 9, 2011, the European Medicines Agency ("EMA") announced that it had been informed by French Medicines Agency ("AFSSAPS") of its decision to suspend the use of pioglitazone-containing medicines (Actos, Competact) in France while awaiting the outcome of ongoing European review.

76.    France's decision was based upon a retrospective cohort study in France using the French National Health Insurance Plan, which demonstrated a statistically significant increase in the risk for bladder cancer in males exposed to Actos for more than a year. The French cohort included 1.5 million patients with diabetes that were followed for 4 years (2006 – 2009).

77.    On June 10, 2011, Reuters published that Germany had joined France in suspending the use of Actos after Germany's Federal Institue for Drugs and Medical Devices ("BfRarM") reviewed the results of the French study. BfRarM recommended that doctors should not put new patients on pioglitazone.

78.    On June 15, 2011, the FDA issued another Safety Announcement stating that "use of the diabetes medication Actos (pioglitazone) for more than one year may be associated with an increased risk of bladder cancer." The FDA ordered information about this risk to be added to the *Warnings and Precautions* section of the label for pioglitazone-containing medicines.

79.    The FDA reported that the risk of bladder cancer increased with increasing dose and duration of pioglitazone use. When compared to persons never exposed to pioglitazone, pioglitazone exposure for more than 12 months was associated with a 40% increase in the risk of bladder cancer. Based on this data, the FDA calculated that therapy with Actos for longer than 12 months was associated with 27.5 excess cases of bladder cancer per 100,000 person-years follow-up, compared to those who never used pioglitazone.

80.    On July 12, 2011, Takeda Limited issued a recall on Actos in France.

\ \ \

\ \ \

13
COMPLAINT

EXHIBIT   A
PAGE    21

81.    Following the recall in France, Takeda Limited refused to issue a recall of Actos in the United States thereby continuing to subject American citizens, including the Plaintiffs and citizens of California, to the significant risk of developing bladder cancer while ensuring the users in France and Germany were no longer subject to this risk.

82.    As the manufacturers and marketers of Actos, Defendants knew or should have known that Actos use for longer than twelve (12) months was associated with bladder cancer.

**Despite Knowledge of Risks, Defendants Continue to Promote Actos**

83.    With the knowledge of the true relationship between long-term use of Actos and developing bladder cancer, rather than take steps to pull the drug off market, Defendants promoted Actos as a safe and effective treatment for type II diabetes.

84.    Picinni, *et al.* analyzed the association between antidiabetic drugs and bladder cancer by reviewing reports from the FDA Adverse Event Report System ("AERS") between 2004 and 2009.  The association was analyzed by the case/noncase methodology.   There were 31 recorded reports of bladder cancer in patients using pioglitazone.  Picinni's results indicated that the reporting odds ratio for pioglitazone was indicative of a "definite risk." *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Adverse Event Reporting,* Piccini, et al. Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011.

85.    Despite its knowledge of this dangerous side effect that can result from Actos use, Defendants refused to warn patients, physicians and the medical community about the risk of bladder cancer.

86.    Actos is one of Defendants' top selling drugs.  Upon information and belief, in the last year, the medication had global sales of $4.8 billion and accounted for approximately 27% of Takeda's revenue.

87.    In 2008, with the knowledge of the risk associated with developing bladder cancer while using Actos long term, Takeda Limited achieved its marketing goal by making Actos the tenth best-selling medication in the United States all while placing American citizens and Californians at risk of developing bladder cancer.

14

COMPLAINT

EXHIBIT___A___
PAGE ___22___

88.     Consumers, including Plaintiffs, who have used Actos for treatment of type II diabetes, have several alternative safer products available to treat the conditions and neither they nor their physicians have been adequately warned about the significant risks associated with long-term Actos therapy.

89.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and physicians the true and significant risks associated with long-term Actos use.

**Federal Investigation Reveals Takeda Downplayed Link Between Actos and CHF Through "Systematic Fraud"**

90.     On February 22, 2012, allegations of Defendant Takeda Pharmaceutical's fraud and deceit regarding congestive heart failure risks were made public by one of its former employees.  The whistleblower suit alleges that Takeda Pharmaceutical Company failed to give accurate reports to regulators about hundreds of congestive heart failure cases associated with Actos.  *See* U.S. ex rel. Helen Ge v. Takeda Pharmaceutical Co., 10-cv-11043 (D.C. Mass. 2011).

91.     The suit was originally filed in June 2010 in the United States District Court for the District of Massachusetts.  Former Takeda medical reviewer Helen Ge filed the suit on the United States' behalf, with twenty-five states, including the State of California joining.  The suit was brought under the Federal False Claims Act and similar state statutes, including the California False Claims Act, Cal. Gov't. Code § 12650 *et seq.* The suit seeks to recover damages and civil penalties on behalf of the governments arising from false and fraudulent records, statements, and claims made, used and caused to be made, used or presented by Defendant Takeda.

92.     Specifically, Ge alleged that Defendant Takeda Pharmaceutical failed to properly identify or report all of the Actos related congestive heart failure adverse events to the United States Food and Drug Administration.  Takeda and other drug makers are required to update the FDA's Adverse Event Reporting System.  Despite the fact that the FDA classified congestive heart failure as a serious adverse event by placing a Black Box congestive heart failure warning on Actos' package insert in 2007, Takeda instructed

15
COMPLAINT

medical reviewers *not* to classify non-hospitalized or non-fatal congestive heart failure cases as serious from late 2007 to January 2010. Ge's complaint estimates that Takeda failed to report several hundred congestive heart failure adverse events as serious during this time period.

93.     According to Ge, "Takeda's motivation to fraudulently report and under-report the serious adverse events was driven by an economic desire to falsely enhance Actos's safety profile and to increase sales." U.S. ex rel. Helen Ge v. Takeda Pharmaceutical Co., 10-cv-11043 at 4. Ge alleges that Takeda's Pharmacovigilance Department Vice President Dr. Maria Paris informed her and other Takeda employees that "As a company, reporting adverse events is one thing, but we must make sure that the company has to be profitable first." *Id.*

94.     Ge's complaint further describes that on multiple occasions, Takeda "improperly instructed" its medical reviewers to "change their professional opinion regarding adverse event classifications and assessments." *Id.* at 4-5. When Ge protested Takeda's actions, her contract was summarily terminated.

95.     Finally, Ge describes the Takeda culture as one that is "riddled with systematic fraud and deceit," and that the company also downplayed data suggesting a link between Actos and bladder cancer. *Id.* at 5.

96.     In establishing a claim under the Federal False Claims Act, Ge alleges that had Takeda not submitted false reports to the FDA, the FDA and public would not have been misled regarding the safety of Actos, which would have resulted in fewer submissions of claims for Actos to federal and state government health care programs. Further, Ge alleges that but for Takeda's fraud; government health care programs would have paid substantially fewer claims.

**Due to Defendants' Fraud, Plaintiffs and Class Unknowingly Purchased a**
**Dangerous Product**

97.     Ultimately, as a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks

16
COMPLAINT

EXHIBIT  A
PAGE  24

1    identified in this Complaint, and that those risks were the direct and proximate result of

2    Defendants' acts, omissions, and misrepresentations.

3          98.     Plaintiffs were prescribed and began taking Actos upon direction of their

4    physicians.  Plaintiffs subsequently developed bladder cancer, and were at an increased

5    risk of congestive heart failure, and other cardiovascular adverse events.

6          99.     Due to Defendants misrepresentations and omissions, Plaintiffs were

7    prescribed and paid for, either partially or in full, Actos.

8          100.    Due to the risk factors associated with Actos, the price that Plaintiffs

9    and/or third party payors paid for Actos did not reflect the overall efficacy of the drug.

10         101.    Plaintiffs would not have purchased Actos had Defendants properly

11   disclosed the risks associated with its long-term use.

12                              **CAUSES OF ACTION**

13                           **FIRST CAUSE OF ACTION**

14              **Violation of California Consumer Legal Remedies Act,**

15               **Business and Professions Code 1750, *et seq.***

16         102.    Plaintiffs reallege and incorporate by reference each of the allegations set

17   forth in this complaint as if set forth herein.

18         103.    The Consumer Legal Remedies Act ("CLRA") applies to Defendants'

19   actions and conduct described herein. The CLRA extends to transactions that are intended

20   to result, or which have resulted, in the sale or lease of goods or services to California

21   consumers.

22         104.    Plaintiffs and each member of the proposed Class are "consumers" within

23   the meaning of Civil Code sections 1761(d) and 1770.  Each payment for Actos by

24   Plaintiffs and the proposed Class members constitutes a "transaction" within the meaning

25   of Civil Code sections 1761(e) and 1770.

26         105.    Defendants are a "person" within the meaning of Civil Code sections

27   1761(c) and 1770, and provide "goods" within the meaning of Civil Code sections

28   1761(b) and 1770.

           106.    Defendants' conduct as alleged herein violated the CLRA during the class

                                    17
                                 COMPLAINT

EXHIBIT____A____

PAGE_____25____

period in several respects, including:

a)      In violation of Section 1770(a)(5), by representing Actos had benefits, characteristics, and/or qualities which it does not have;

b)      In violation of Section 1770(a)(7), by representing that Actos is of a particular standard and quality, when it is not; and

c)      In violation of Section 1770(a)(9), by advertising goods or services with the intent not to sell them as advertised.

107.    Defendants had a duty to disclose the risks and efficacy of their prescription drug. The facts concealed or inadequately disclosed by Defendants were material, in that a reasonable person would have considered them important in deciding whether to pay for Actos.

108.    Defendants' concealment and deceptive practices, in violation of the CLRA, were designed to induce Plaintiffs and the proposed Class members to purchase Actos.

109.    Defendants intended to do the acts that were deceptive and/or fraudulent, namely, to market, sell and distribute Actos, without disclosing material information, namely the risks and dangers associated with Actos.

110.    Each of the representations Defendants made regarding Actos were material, consistent, uniform, and widespread. Defendants specifically targeted Plaintiffs and the proposed Class members and their doctors, and third-party payors. In fact, Defendants intended for their representations to induce Plaintiffs and the proposed Class members.

111.    Defendants' deceptive marketing scheme concerning Actos violates the CLRA because, *inter alia*, Defendants:

a)      knowingly concealed, suppressed, or omitted material information regarding Actos' safety and effectiveness from Plaintiffs and the proposed Class members, and to their financial detriment;

b)      knowingly misrepresented the safety and efficacy of Actos from Plaintiffs and the proposed Class' members to their financial detriment; and

EXHIBIT   A
PAGE      26

c)        marketed, promoted, and advertised Actos as a safe and effective drug when the purported safety and effectiveness is deceptive and unfounded.

112.    Defendants' unlawful conduct as described herein arose, is directed, and emanated from Defendants' headquarters to the detriment of Plaintiffs and the proposed Class' members.

113.    Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and/or unconscionable practices have the tendency, capacity, and likelihood to deceive Plaintiffs and the proposed Class' members.

114.    Defendants intended, or consciously disregarded, the fact that Actos' safety information was concealed, suppressed, omitted, and/or misrepresented so that Defendants were able to sell Actos.

115.    Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and/or unconscionable practices caused Plaintiffs and the proposed Class' members to suffer ascertainable losses in the amount of the monies they overpaid for Actos, and/or paid for more Actos prescriptions, without knowing the drug's efficacy or lack thereof for which it is marketed, promoted, or advertised.

116.    Plaintiffs and the proposed Class' members would not have overpaid and/or paid for more Actos prescriptions had they known of Defendants' deceptive and misleading marketing scheme, or the extent of said scheme.

117.    Plaintiffs and the proposed Class' members are accordingly harmed by Defendants' conduct in violation of the CLRA.

118.    By letter dated February 2, 2012, and mailed as directed in Civil Code section 1782, Plaintiffs by their counsel, have notified Defendants of their violations of the Consumer Legal Remedies Act and have demanded that Defendants provide a remedy that rectifies its conduct.  A true copy of the letter is attached hereto as Exhibit A.  More than thirty days have elapsed since Plaintiffs mailed the letter.  More than thirty days have elapsed and Defendants have not remedied the wrongs described in the letter and in this complaint.

\\\

19
COMPLAINT

EXHIBIT   A
PAGE      27

119. Pursuant to the provisions of Civil Code section 1780, Plaintiffs on behalf of themselves and each member of the proposed Class, seek declaratory relief, pursuant to Civil Code sections 1780, 1782(b) as requested herein, and any other relief the Court deems appropriate.

120. Plaintiffs and the class are entitled to an award of attorneys' fees and costs against defendants pursuant to the provisions of Civil Code section 1780(d).

121. Wherefore, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment as set forth hereinafter.

## SECOND CAUSE OF ACTION

### Violations of the California Unfair Competition Law,

### Business and Professions Code Section 17200, *et seq.*

122. Plaintiffs reallege and incorporate by reference each of the factual allegations set forth in this complaint as if set forth herein.

123. California Business and Professions Code Section 17200 *et seq.* ("Section 17200"), also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

124. Defendants violated the "unfair," "unlawful," and "fraudulent" prongs of Section 17200 based on the conduct herein alleged. As a result of Defendant's conduct, Plaintiffs and the proposed Class suffered injury in fact and lost money or property.

125. Defendants have engaged in unfair, unlawful and fraudulent competition that has caused Plaintiffs and the proposed Class to have an increased risk of contracting a serious latent disease.

126. Defendants' wrongful business acts constitute a continuing course of conduct of unfair, unlawful and fraudulent competition because Defendants were, and Defendant Takeda continues to sell Actos, and market it in a manner that is likely to deceive the public. Plaintiffs and the proposed Class suffered actual and monetary injury because when they received drugs that were substantially and materially different from and inferior to what the Plaintiffs and the proposed Class were entitled to receive, and that

20

COMPLAINT

1  the Plaintiffs and the proposed Class received such different and inferior drugs as a result
2  of Defendants' unlawful deceptive conduct.

3      127.   Defendants' business practices are unfair because they offend established
4  public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially
5  injurious to Plaintiffs and the proposed Class in that they were led to believe that Actos is
6  safe, efficacious and effective.  Defendants' unfair business practices include, but are not
7  limited to:

8      a)      knowingly concealing, suppressing, or omitting material information
9              regarding Actos' safety and effectiveness from Plaintiffs and the proposed Class
10             members and to their financial detriment;

11     b)      knowingly misrepresenting the safety and efficacy of Actos to Plaintiffs
12             and the proposed Class members to their financial detriment;

13     c)      marketing, promoting, and advertising Actos as a safe and effective drug
14             when the purported safety and efficacy is deceptive and unfounded; and

15     d)      increasing Plaintiffs' and the proposed Class members' risk of bladder
16             cancer and congestive heart failure, and other cardiovascular adverse events.

17     128.   Defendants' business practices are unlawful in that Defendants' conduct
18 constitutes breaches of common law including unjust enrichment and violations of FDA
19 Regulations which prohibit marketing of materials that are not fair and balanced. *See* 21
20 C.F.R. 99.103; 21 C.F.R. §201.5; 21 C.F.R §99.205; 21 C.F.R. §201.6(a); 21 U.S.C.
   §360aaa; 360aaa-1; 502(a) and 201(n) of the FDCA (21 U.S.C. 352(a) and 321(n)).

21     129.   Defendants' business practices are fraudulent in that the business acts and
22 practices described above had a tendency and likelihood to deceive persons to whom such
23 conduct was and is targeted by selling, marketing and distributing Actos as safe,
24 efficacious and effective when the purported safety and efficacy is deceptive and
25 unfounded.  In purchasing Actos, Plaintiffs reviewed and relied on physicians' advice and
26 Actos' package insert.  Based on these representations, Plaintiffs reasonably expected that,
27 among other things, Actos would enhance the health of persons with diabetes.  As detailed
28 above, Actos is not efficacious in enhancing a Type II diabetic's overall health as the drug

EXHIBIT  A
PAGE   29

fails to reduce risk factors.   Furthermore, Defendants failed to disclose material information to Plaintiffs regarding Actos' safety and effectiveness.   Had Plaintiffs' physicians known these material facts, Plaintiffs may have been prescribed alternative treatments.

130.   The acts and practices engaged in by Defendants, and described herein, further constitute unlawful, unfair and fraudulent business practices in that the justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs and the proposed Class, and/or Defendants' conduct constitutes untrue or misleading actions in that such conduct has a tendency to deceive a reasonable person, including Plaintiffs and the proposed Class.

131.   Plaintiffs have standing to pursue this claim because each Plaintiff has suffered injury in fact and loss of money and/or property as a result of the wrongful conduct alleged herein.   Plaintiffs have spent approximately thousands of dollars on purchases of Actos.

132.   As a direct and proximate result of Defendants' unfair and deceptive business practices, Plaintiffs and the members of the class have suffered injury in fact.

133.   Plaintiffs and the proposed Class would not have paid for Actos but for Defendants' scheme described herein.

134.   As a direct and proximate result of Defendants' unfair and deceptive business practices, Defendants have been unjustly enriched and should be ordered to make restitution to Plaintiffs and members of the class pursuant to Business and Professions Code Sections 17203 and 17204, including restitution of all monies paid to Defendants for Actos, disgorgement of all profits accruing to Defendants because of Defendants' unlawful, unfair and fraudulent business practices and appropriate declaratory relief as described herein.

135.   Wherefore, Plaintiffs on behalf of themselves and all others similarly situated, demand judgment as set forth hereinafter.

\ \ \

\ \ \

EXHIBIT   A
PAGE   30

## THIRD CAUSE OF ACTION

### Violation of the California False Advertising Law,

### Business and Professions Code Section 17500, *et seq.*

136.    Plaintiffs reallege and incorporate by reference each of the factual allegations set forth in this complaint as if set forth herein.

137.    Beginning in or about July 1999, Defendants engaged in advertising and marketing to the public and solicited Actos on a nationwide basis, including in California.

138.    Defendants engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the prescription and purchase of Actos. The Defendants' advertising and marketing contained substantially identical representations concerning the safety, effectiveness, and efficacy of Actos. Each of the representations Defendants made regarding Actos were material, consistent, uniform, and widespread. Defendants specifically targeted the proposed Class, their doctors and third-party payors.

139.    Defendants' deceptive scheme violated the False Advertising Law because Defendants' advertising and marketing was untrue, misleading, and likely to deceive the public and/or has deceived the public. Specifically, Defendants' advertising and marketing falsely represented the safety and efficiency of Actos, when in fact use of Actos put Plaintiffs and the proposed Class at a greater risk of bladder cancer and congestive heart failure, and other cardiovascular adverse events.

140.    As a result of Defendants' acts and conduct alleged herein, Plaintiffs and the proposed Class have suffered injury in fact and have lost money or property. Plaintiffs and the Class have all suffered a financial loss as a result of the Defendants' acts.

141.    In making and disseminating the false, deceptive or misleading solicitations, as alleged herein, Defendants knew or should have known that the information and statements contained therein were false, deceptive or misleading, and have acted in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

142.    Plaintiffs, on behalf of themselves and each member of the proposed Class, seek restitution and declaratory relief, including an order requiring Defendant to disgorge all profits obtained as a result of their unfair competition.

23
COMPLAINT

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

143.    Plaintiffs reallege and incorporate by reference each of the factual allegations set forth in this complaint as if set forth herein.

144.    Defendants have been and continue to be enriched by their deceptive acts and omissions alleged herein for all states wherein the Class' members reside.

145.    These deceptive acts and omissions allow Defendants to gain millions of dollars in profits in the State of California that would not have been gained but for Defendants' deceptive acts and omissions.

146.    Plaintiffs and the proposed Class members and those similarly situated paid Defendants an amount that exceeds the value of the product identified herein as a result of Defendants' acts and omissions.

147.    Plaintiffs and the Class members suffered damages due to the Defendants' acts and omissions as alleged herein.

148.    Defendants have and continue to be unjustly enriched as a result of their deceptive acts and omissions.

149.    Defendants lack any legal justification for engaging in a course of deceptive acts and omissions as alleged herein at Plaintiffs and the Class expense.

150.    No other remedy at law can adequately compensate Plaintiffs and the Class members for the damages occasioned by Defendants' conscious choice to engage in a course of deceptive acts and omissions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request that the Court enter judgment as follows:

1.    That this action be certified as a Class action on behalf of the proposed Plaintiffs and the Class under California Section 382 and that Plaintiffs be designated as the representatives of the Class;

2.    Prejudgment and post judgment interest as provided by law;

EXHIBIT___A___
PAGE ____32___

3.    For an order requiring Defendants to make restitution of all revenues, earnings, compensation and benefits obtained as a result of its wrongful conduct;

4.    Attorneys' fees, expenses and costs of this action; and

5.    For such other and further relief as this Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demands a trial by jury on all issues for which a right to jury trial exists.

Dated: April 18, 2012

Respectfully submitted,

**SIZEMORE LAW FIRM, PLC.**

By: _____
J. Paul Sizemore, Esq.
Jeffrey C. Bogert, Esq.
Laurie E. Kamerrer, Esq.
Attorneys for Plaintiffs

EXHIBIT___A
PAGE   33

1 | Catherine Valerio Barrad, SBN 168897
cbarrad@sidley.com
2 | Alycia A. Degen, SBN 211350
adegen@sidley.com
3 | Amanda V. Lopez, SBN 273602
alopez@sidley.com
4 | SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
5 | Los Angeles, California 90013
Telephone: (213) 896-6000
6 | Facsimile: (213) 896-6600

7 | Attorneys for Defendants
TAKEDA PHARMACEUTICALS
8 | AMERICA, INC. and ELI LILLY AND
COMPANY

9

**ORIGINAL FILED**

**JUN 0 1 2012**

**LOS ANGELES
SUPERIOR COURT**

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [Rule 1550(b)] | ) ) ) JCCP No. 4696 |
| IN RE ACTOS PRODUCT LIABILITY CASES | ) ) ) CLASS ACTION |
| THIS DOCUMENT RELATES TO: | ) ) ANSWER AND SEPARATE OR |
| *Gary Bernor, et al v. Takeda Pharmaceuticals America, Inc., et al,* Los Angeles Superior Court Case No. BC482676 | ) AFFIRMATIVE DEFENSES OF ) TAKEDA PHARMACEUTICALS ) AMERICA, INC. AND ELI LILLY AND ) COMPANY TO PLAINTIFFS' ) COMPLAINT; DEMAND FOR JURY ) TRIAL ) ) ) Action Filed: April 18, 2012 ) Assigned to: Hon. Kenneth R. Freeman ) Dept.: 322 ) Trial Date: Not Set ) |

EXHIBIT _____ A
PAGE _____ 34

Takeda Pharmaceuticals America, Inc. ("Takeda") and Eli Lilly and Company, by and through their attorneys, answer Plaintiffs' Complaint as follows:

## GENERAL DENIAL

1.    Pursuant to California Code of Civil Procedure ("CCP") § 431.30, Takeda and Eli Lilly deny, both generally and specifically, each and every allegation in the Complaint, and specifically deny that Plaintiffs have been, are, or will be damaged in the amount alleged, or any manner or sum whatsoever, or entitled to any recovery or remedy of any type whatsoever, by reason of any act, conduct, or omission of Takeda or Eli Lilly.

## SEPARATE AFFIRMATIVE DEFENSES

2.    Without waiving or excusing the burden of proof of Plaintiffs, or admitting that Takeda and Eli Lilly have any burden of proof, Takeda and Eli Lilly hereby assert the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

3.    Plaintiffs' alleged injuries were proximately caused by circumstances, events, or persons over whom Takeda and Eli Lilly had no authority or control and for which Takeda and Eli Lilly are not answerable in damages to Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

4.    Plaintiffs assumed the risks, if any, inherent in the use and continued use of ACTOS®.

## THIRD AFFIRMATIVE DEFENSE

5.    To the extent Plaintiffs' claims were caused by the actions, omissions, or products of persons or entities over whom Takeda or Eli Lilly had no dominion, authority, or control, Takeda and Eli Lilly are entitled to have their liability to the Plaintiffs, if any, reduced as a result of the fault or negligence of said persons or entities, pursuant to governing law.

## FOURTH AFFIRMATIVE DEFENSE

6.    Plaintiffs' recovery is barred and/or should be reduced under the applicable law because of Plaintiffs' contributory negligence or fault and/or comparative negligence or fault.

EXHIBIT   A
PAGE   35

1

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA
AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

**FIFTH AFFIRMATIVE DEFENSE**

7.     The alleged injuries sustained by Plaintiffs, if any, were caused, in whole or in part, by pre-existing physical, medical, and/or physiological conditions, for which Takeda and Eli Lilly have no legal responsibility.

**SIXTH AFFIRMATIVE DEFENSE**

8.     Plaintiffs' alleged injuries, if related to Plaintiffs' use of ACTOS®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of Takeda and Eli Lilly.

**SEVENTH AFFIRMATIVE DEFENSE**

9.     The New Drug Application for ACTOS® was approved by the FDA under the applicable statute, 21 U.S.C. § 301 *et seq.*, and regulations promulgated thereunder.  Compliance with such statutes and regulations by Takeda demonstrates that ACTOS® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiffs' claims against Takeda and Eli Lilly.  Compliance with such statutes and regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

**EIGHTH AFFIRMATIVE DEFENSE**

10.     Plaintiffs' claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling, and the FDA's specific determinations regarding ACTOS® and other drugs in its class.

**NINTH AFFIRMATIVE DEFENSE**

11.     All labeling for ACTOS® has been approved by the FDA under the applicable statute, 21 U.S.C. § 301 *et seq.*, and regulations promulgated thereunder.  Plaintiffs' claims are preempted by federal law pursuant to the Supremacy Clause of the United States Constitution to the extent Plaintiffs assert that state law required changes to the FDA-approved labeling that the FDA itself would not have approved. Plaintiffs' claims also are preempted by federal law pursuant to the

EXHIBIT ___A___

PAGE ___36___

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA
AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

1  Supremacy Clause of the United States Constitution because they would obstruct the federal

2  regulation of drug labeling and frustrate the achievement of congressional objectives.

3  **TENTH AFFIRMATIVE DEFENSE**

4      12.    To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions

5  made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*,

6  531 U.S. 341 (2001).

7  **ELEVENTH AFFIRMATIVE DEFENSE**

8      13.    Plaintiffs' claims against Takeda and Eli Lilly are barred as a matter of law pursuant

9  to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts,

10  including, but not limited, to Section 402A, comment k.

11  **TWELFTH AFFIRMATIVE DEFENSE**

12      14.    Takeda and Eli Lilly give notice that to the extent that the sophisticated purchaser

13  doctrine is applicable to any of the allegations in the Complaint, Takeda and Eli Lilly intend to rely

14  upon same in defense of this action.

15  **THIRTEENTH AFFIRMATIVE DEFENSE**

16      15.    The claims in the Complaint are barred in whole or in part by the learned

17  intermediary doctrine.

18  **FOURTEENTH AFFIRMATIVE DEFENSE**

19      16.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted against

20  Takeda and Eli Lilly in that the methods, standards, and techniques utilized with respect to the

21  design, manufacture, marketing, and sale of the prescription drug ACTOS®, including adequate

22  warnings and instructions with respect to the product's use included in the product's package insert

23  and other literature, conformed to the applicable state of the art, and the applicable standard of care

24  based upon available medical and scientific knowledge.

25  **FIFTEENTH AFFIRMATIVE DEFENSE**

26      17.    Plaintiffs' claims are barred because ACTOS® was neither defective nor

27  unreasonably dangerous in its design, manufacture or marketing and were reasonably safe and

28  reasonably fit for its intended uses, thereby barring Plaintiffs' recovery.    EXHIBIT   A

PAGE   37

3

### SIXTEENTH AFFIRMATIVE DEFENSE

18.     The warnings and instructions accompanying ACTOS® at the time of the occurrence or injuries alleged by Plaintiffs were legally adequate warnings and instructions.

### SEVENTEENTH AFFIRMATIVE DEFENSE

19.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### EIGHTEENTH AFFIRMATIVE DEFENSE

20.     Plaintiffs' Complaint against Takeda and Eli Lilly fails to state a claim upon which relief may be granted.

### NINETEENTH AFFIRMATIVE DEFENSE

21.     Plaintiffs' claims against Takeda and Eli Lilly are barred, in whole or in part, by laches, waiver, and/or estoppel.

### TWENTIETH AFFIRMATIVE DEFENSE

22.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate alleged damages.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

23.     The injuries and damages claimed by Plaintiffs, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of Takeda or Eli Lilly was not the proximate and/or competent producing cause of such alleged injuries and damages.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

24.     Any claims by Plaintiffs relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First Amendment rights to petition the government.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

25.     The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including Takeda and Eli Lilly.

EXHIBIT   A
PAGE   38

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

26.    Plaintiffs' claims are barred because the benefits of ACTOS® outweigh the risks, if any, that might be associated with the products.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

27.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted as to costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement, or restitution.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

28.    Plaintiffs' claims are barred in whole or in part because the commercial speech relating to ACTOS® was not false or misleading and is protected under the First Amendment to the United States Constitution and the California Constitution.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

29.    Plaintiffs' claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

30.    Plaintiffs cannot state a claim with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiffs is subject to the exclusive regulation of the FDA.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

31.    This Court should abstain from adjudicating Plaintiffs' claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

### THIRTIETH AFFIRMATIVE DEFENSE

32.    Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.

EXHIBIT   A
PAGE   39

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

### THIRTY-FIRST AFFIRMATIVE DEFENSE

33.     To the extent that Plaintiffs' Complaint seeks recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

34.     To the extent that Plaintiffs' claims have been settled or Plaintiffs will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of Takeda and Eli Lilly, if any, should be reduced accordingly.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

35.     Plaintiffs' claims may be barred, in whole or in part, due to res judicata, collateral estoppels, or by release of claims.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

36.     Plaintiffs' Complaint fails to join indispensable parties necessary for the just adjudication of this matter.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

37.     Plaintiffs did not detrimentally rely on any labeling, warnings, or information concerning ACTOS®.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

38.     Applicable law does not recognize a post-sale duty to warn in the present circumstances. Accordingly, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

39.     Plaintiffs' alleged injuries and damages, if any, were the result of an idiosyncratic reaction which Takeda and Eli Lilly could not reasonably foresee.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

EXHIBIT   A
PAGE   40

40.     Plaintiffs, or Plaintiffs' physicians, were aware or should have been aware of any potential hazards reported to be associated with the use of ACTOS® and appreciated or should have appreciated these potential hazards based, in part, on the directions, information, and warnings

6

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

provided by Takeda, Eli Lilly, and others generally available in the medical and scientific literature. Therefore, Takeda and Eli Lilly had no duty to warn of any alleged danger or defect.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

41.    Plaintiffs are barred from recovering any damages by virtue of the fact that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

### FORTIETH AFFIRMATIVE DEFENSE

42.    Plaintiffs' Complaint fails to state a claim for fraud, misrepresentation, deceit and/or deception, and fails to allege the circumstances constituting fraud with the particularity required by California law.

### FORTY-FIRST AFFIRMATIVE DEFENSE

43.    Plaintiffs' claims purportedly asserted under statutes and regulations relating to prescription drugs fail, in whole or in part, because these statutes and regulations do not contain or create any private cause of action.

### FORTY-SECOND AFFIRMATIVE DEFENSE

44.    Any non-economic loss alleged in the Complaint must be allocated in accordance with the provisions of California Civil Code Section 1431.1 ("Proposition 51").

### FORTY-THIRD AFFIRMATIVE DEFENSE

45.    Plaintiffs' recovery, if any, is limited and/or restricted pursuant to the California Supreme court's decision in *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541 (2011).

### FORTY-FOURTH AFFIRMATIVE DEFENSE

46.    The conduct and activities of Takeda and Eli Lilly with respect to the product which is the subject matter of this action were fair and truthful and were based upon the state of knowledge existing at the relevant time alleged in Plaintiffs' Complaint, and therefore Plaintiffs' claims are barred under applicable state consumer protection law.

EXHIBIT__A____
PAGE____41

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

1

### FORTY-FIFTH AFFIRMATIVE DEFENSE

2    47.   Plaintiffs' consumer protection claims are frivolous, without legal or factual merit,

3    and/or have been brought solely for the purpose of harassment, and Takeda and Eli Lilly are

4    entitled to indemnification for its resulting damages, including reasonable attorney fees and costs.

5

### FORTY-SIXTH AFFIRMATIVE DEFENSE

6    48.   This Court may be an improper venue for the trial of this action.

7

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

8    49.   This Court is not the proper forum and is not a convenient forum for the adjudication

9    of Plaintiffs' claims.

10

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

11    50.   The Complaint fails to state a claim under the California Consumer Legal Remedies

12    Act, California Civil Code, Section 1750, *et seq.*, because Plaintiffs did not comply with the

13    affidavit requirement of California Civil Code Section 1780(d).

14

### FORTY-NINTH AFFIRMATIVE DEFENSE

15    51.   Plaintiffs' class action claims fail because a class action is an inappropriate vehicle

16    for the prosecution of Plaintiffs' claims.   Plaintiffs' claims do not meet the criteria for class

17    certification and may not be pursued as a class action.

18

### FIFTIETH AFFIRMATIVE DEFENSE

19    52.   Plaintiffs' class action claims fail because Plaintiffs are inadequate representatives of

20    the proposed putative class.

21

### FIFTY-FIRST AFFIRMATIVE DEFENSE

22    53.   Plaintiffs' class action claims fail because the questions of law and fact presented in

23    the Complaint are not common to the putative class.

24

### FIFTY-SECOND AFFIRMATIVE DEFENSE

25    54.   Plaintiffs' class action claims fail because questions of law and fact common the

26    members of the putative class do not predominate over questions affecting only individual

27    members.

28

EXHIBIT A
PAGE 42

8

1

## FIFTY-THIRD AFFIRMATIVE DEFENSE

2        55.    Plaintiffs' class action claims fail because a class action is not superior to other

3   available methods for the fair and efficient adjudication of the controversy.

4

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

5        56.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted on a

6   class-wide basis.

7

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

8        57.    Plaintiffs' class action claims fail because the proposed class is not ascertainable.

9

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

10       58.    Takeda and Eli Lilly reserve the right to modify, clarify, amend, or supplement these

11  separate or affirmative defenses as discovery proceeds in this case.

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

EXHIBIT     A
PAGE        43

9

1

## **PRAYER**

2

WHEREFORE, Takeda and Eli Lilly request that this Court enter an order denying class

3

certification, and enter judgment in their favor and against Plaintiffs on all counts and allegations of

4

the Complaint and that the Court award Takeda and Eli Lilly costs and such other relief as it deems

5

just and proper.

6

7

DATED:  June 1, 2012

8

SIDLEY AUSTIN LLP

9

By:  _____

10

Catherine Valerio Barrad

11

Catherine Valerio Barrad
cbarrad@sidley.com

12

Alycia A. Degen
adegen@sidley.com

13

Amanda V. Lopez
alopez@sidley.com

14

SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000

15

Los Angeles, California  90013
Telephone:  (213) 896-6000

16

Facsimile:  (213) 896-6600

17

*Counsel for Takeda Pharmaceuticals America,
Inc. and Eli Lilly and Company*

18

OF COUNSEL:

19

Sara J. Gourley

20

Sherry A. Knutson
Nathan A. Huey

21

Jennifer A. Foster
SIDLEY AUSTIN LLP

22

One South Dearborn Street
Chicago, IL 60603

23

(312) 853-7000 Telephone
(312) 853-7036 Facsimile

24

25

26

27

EXHIBIT ___A___

28

PAGE ___44___

10

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA
AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2      Takeda Pharmaceuticals America, Inc. and Eli Lilly and Company demand a jury trial on all

3 issues so triable.

4

5 DATED:  June 1, 2012

6                                                    SIDLEY AUSTIN LLP

7                                                    By: _____
                                                        Catherine Valerio Barrad

8

9                                                    Catherine Valerio Barrad
                                                     cbarrad@sidley.com
10                                                   Alycia A. Degen
                                                     adegen@sidley.com
11                                                   Amanda V. Lopez
                                                     alopez@sidley.com
12                                                   SIDLEY AUSTIN LLP
                                                     555 West Fifth Street, Suite 4000
13                                                   Los Angeles, California  90013
                                                     Telephone:  (213) 896-6000
14                                                   Facsimile:  (213) 896-6600

15                                                   *Counsel for Takeda Pharmaceuticals America,
                                                     Inc. and Eli Lilly and Company*

16 OF COUNSEL:

17 Sara J. Gourley
   Sherry A. Knutson
18 Nathan A. Huey
   Jennifer A. Foster
19 SIDLEY AUSTIN LLP
   One South Dearborn Street
20 Chicago, IL 60603
   (312) 853-7000 Telephone
21 (312) 853-7036 Facsimile

22

23

24

25

26

27                                                   EXHIBIT __A__

28                                                   PAGE ___45___

ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA
AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL

PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES        )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 West Fifth Street, Suite 4000, Los Angeles, CA 90013.

    On June 1, 2012, I served the foregoing document described as:

- **ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES OF TAKEDA PHARMACEUTICALS AMERICA, INC. AND ELI LILLY AND COMPANY TO PLAINTIFFS' COMPLAINT; DEMAND FOR JURY TRIAL**

on interested parties in this action through the use of the California Actos Products Liability Website maintained by Case Anywhere. I caused the foregoing document to be transmitted to Case Anywhere for electronic service in the following manner (check one box):

    ☒    I provided the document(s) listed above electronically to Case Anywhere through the Case Anywhere website pursuant to the instructions on that website. [The document will be deemed served on the date that it was uploaded to the website as indicated by the Case Anywhere system.]

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on June 1, 2012 at Los Angeles, California.

_____
Cynthia Sanchez

EXHIBIT___A___
PAGE____46____

---

**PROOF OF ELECTRONIC SERVICE**

# EXHIBIT B

## DECLARATION OF AUDREY NICOLL

I, Audrey K. Nicoll do hereby declare and say:

1.      I have worked at Takeda Pharmaceuticals U.S.A., Inc. ("TPUSA") since July 2008, where I currently hold the position of Associate Director, Accounting.  My responsibilities include the preparation and reporting of TPUSA financial statements.

2.      TPUSA is the parent corporation of Takeda Pharmaceuticals America, Inc., which sells, markets, and distributes the Actos family of prescription anti-diabetes medications in the United States, including prescription medications sold under the trade names Actos, ActoPlus Met, ActoPlus Met XR, and Duetact (collectively referred to as "Actos").

3.      I have reviewed state level rebate claim data and, from those records, can aver that Takeda has received in excess of $5 million in revenue from the sale of Actos to consumers in the State of California since July 1999.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Deerfield, Illinois this 4th day of June, 2012:

_Audrey K Nicoll_
Audrey K. Nicoll

EXHIBIT __B__
PAGE    __47__