D'Lesli M. Davis (pro hac vice)
dlesli.davis@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone:   (214) 855-8000
Facsimile:   (214) 855-8200

Darryl Anderson (pro hac vice)
darryl.anderson@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

*Attorneys for Defendant*
TAKEDA PHARMACEUTICALS
AMERICAN, INC., et al.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY BERNOR, et al., | Civil Action No. 2:12-cv-04856-VAP (JPRx) |
| Plaintiffs, | |
| v. | **TAKEDA'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(B)(1), 12(H)(3), AND 12(C) AND REQUEST FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| TAKEDA PHARMACEUTICALS AMERICA, INC., et al., | |
| Defendants. | |
| | Date:        January 29, 2018 |
| | Time:        2:00 p.m. |
| | Location:   Courtroom 8A |
| | Judge:       Hon. Virginia A. Phillips |
| | [Filed concurrently with Declaration of David E. Smith; Declaration of Darryl W. Anderson; and [Proposed] Order] |

## NOTICE OF MOTION

**TO PLAINTIFFS AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, January 29, 2018, at 2:00 p.m. in Courtroom 8A of the United States District Court, Central District of California,

- 1 -

DOCUMENT PREPARED
ON RECYCLED PAPER

Western District, located at First Street Courthouse, 350 W. 1st Street, Courtroom 8A, 8th Floor, Los Angeles, California 90012, or as ordered by the Court, Defendant Takeda Pharmaceuticals America Inc. ("Takeda"), by and through its attorneys, will and hereby do move to dismiss the above-styled action with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction and under Rule 12(c) for judgment on the pleadings because all Plaintiffs in the above-styled action have fully settled and irrevocably released all claims and allegations in this action.  Takeda also requests that this Court exercise its inherent equitable power and award Takeda attorneys' fees and costs incurred litigating this case since the time Plaintiffs released their claims against Takeda.

This Motion is made following the conference of counsel pursuant to L.R. 7-3.  This Motion is made pursuant to Fed. R. Civ. P. 12(b)(1), 12(h)(3), and 12(c), and is based on this Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities; the pleadings and papers on file herein; and upon such other matters as may be presented to the Court at the time of hearing.

Dated: December 18, 2017          Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**


By*/s/ D'Lesli M. Davis*
D'Lesli M. Davis
(dlesli.davis@nortonrosefulbright.com)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: 214-855-8221
Fax: 214-855-8200

Darryl Anderson
(Darryl.anderson@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
Tel: 713-651-5562
Fax: 713-651-5246
*Attorneys for Defendant*
TAKEDA PHARMACEUTICALS
AMERICAN, INC., et al.

Document Prepared
on Recycled Paper

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

INTRODUCTION ................................................................................1

FACTS THAT THIS COURT MAY JUDICIALLY NOTICE OR CONSIDER UNDER RULES 12(B)(1) AND 12(C).....................................4

I. 2012: Plaintiffs filed this putative class action in state court, Defendants pleaded the affirmative defenses of settlement and release, and, after removal and transfer to this Court, the JPML transferred this suit to the Actos MDL. ...............................................................4

II. 2013: Plaintiffs in this suit file separate personal injury claims against Defendants in the Actos MDL. ..................................................5

III. 2015: The Actos Resolution Program is created, allowing claimants to voluntarily opt in to the program and release their Actos claims. .................5

IV. 2015: Plaintiffs voluntarily opt in to the Actos Resolution Program and execute broad releases of all Actos claims. ..............................6

V. 2015: Plaintiffs' Releases and Opt-In Notices are irrevocable and cannot be unilaterally withdrawn. ......................................................8

VI. 2015: Plaintiffs agreed to "indemnify, repay, and hold harmless" Defendants from any claim arising from or related to their use of Actos. .......................................................................9

VII. 2017: Having fully released all Actos claims two years earlier, Plaintiffs try for first time in 2017 to amend their complaint to substitute in new plaintiffs. ........................................................9

LEGAL STANDARD ...........................................................................11

I. A Rule 12(b)(1) and 12(h)(3) motion to dismiss can be brought at any time and can rely on extrinsic evidence. ...........................................11

II. A Rule 12(c) motion for judgment on the pleadings can be brought after a defendant answers the complaint and can rely on outside evidence of a release where pleaded as an affirmative defense in the answer. ........................................................................12

ARGUMENT ..................................................................................14

I. Plaintiffs' released claims should be dismissed with prejudice for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3). ................14

    A. A suit is moot and lacks the required live case or controversy if the plaintiff has settled and released all claims...................................14

    B. The Releases are enforceable under Illinois law. ..............................16

    C. The Releases are final and irrevocable. ........................................17

    D. The Releases are unambiguous and include all claims in this case, rendering this suit moot and extinguishing any live "case or controversy," and requiring dismissal with prejudice. ..................17

DOCUMENT PREPARED ON RECYCLED PAPER

E.      Because Plaintiffs' claims became moot before class
            certification, no cognizable claims exist for the Court to revive,
            and dismissal should be granted with prejudice and leave to
            amend should be denied. ................................................................. 20

II.    Takeda's pleaded affirmative defenses of settlement, release, waiver,
       and estoppel bar all of Plaintiffs' claims, requiring judgment on the
       pleadings under Rule 12(c). ........................................................................ 22

       A.      Plaintiffs' settlement and release require dismissal of this suit. ......... 22

       B.      Plaintiffs' intentional waiver of all Actos claims bars this suit. ......... 23

       C.      Equitable and promissory estoppel also bar the claims in this
               suit.    ...................................................................................... 23

III.   The Court should issue an equitable award of attorneys' fees and costs
       based on Plaintiffs' bad faith refusal to dismiss their released claims. ........ 24

CONCLUSION ...................................................................................................... 25

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos (Pioglitazone) Prod. Liab. Litig.*,
  -- F. Supp. 3d --, No. 6:11-MD-2299, 2017 WL 3033134 (W.D. La.
  July 17, 2017) .................................................................................................. 6

*Adler v. Takeda Pharmaceuticals USA, Inc.*,
  MDL No. 6:11-md-2299, No. 6:13-cv-02031-RFD-PJH (W.D. La.
  June 14, 2013)............................................................................................... 5, 9

*ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*,
  -- F.3d –, No. 16-2331, 2017 WL 6378264 (7th Cir. Dec. 14, 2017) .......... 18, 19

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ........................................................................................ 17

*In re Apple Iphone Antitrust Litig.*,
  846 F.3d 313 (9th Cir. 2017) ......................................................................... 11

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ...................................................................................... 11

*Arizona v. Tohono O'odham Nation*,
  818 F.3d 549 (9th Cir. 2016) ......................................................................... 23

*Beverly v. Abbott Labs.*,
  817 F.3d 328 (7th Cir. 2016) ......................................................................... 16

*Birmingham Steel Corp. v. Tennessee Valley Auth.*,
  353 F.3d 1331 (11th Cir. 2003)...................................................................... 21

*Blair v. Shanahan*,
  38 F.3d 1514 (9th Cir. 1994) ......................................................................... 15

*Boeckman v. A.G. Edwards, Inc.*,
  461 F. Supp. 2d 801 (S.D. Ill. 2006) ............................................................. 13

*In re Cellular 101, Inc.*,
  539 F.3d 1150 (9th Cir. 2008)........................................................................ 22

*Cent. States, Se. & Sw. Areas Pension Fund v. Art Pape Transfer, Inc.*,
  881 F. Supp. 1168 (N.D. Ill. 1995), *aff'd*, 79 F.3d 651 (7th Cir.
  1996).............................................................................................................. 18

*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) ....................................................................... 14

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006)........................................................................ 24

DOCUMENT PREPARED
ON RECYCLED PAPER

*Davis v. United States*,
   No. EDCV07481VAPOPX, 2009 WL 10674302 (C.D. Cal. Sept. 4,
   2009) (Phillips, J.) ........................................................................................... 11

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ..................................................................... 11, 12

*Elustra v. Mineo*,
   595 F.3d 699 (7th Cir. 2010) ......................................................................... 16

*Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v.*
   *Anchor Capital Advisors*,
   498 F.3d 920 (9th Cir. 2007) ..................................................................... 3, 19

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..................................................................... 2, 25

*Garcia v. Lane Bryant, Inc.*,
   No. 1:11CV01566 LJO DLB, 2012 WL 293544 (E.D. Cal. Jan. 31,
   2012) ............................................................................................... 15, 20, 21

*Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*,
   23 F.3d 1542 (9th Cir. 1994) ......................................................................... 14

*Gonda v. Permanente Med. Grp., Inc.*,
   691 F. App'x 397 (9th Cir. 2017) .................................................................. 22

*Gracia v. City of New York*,
   No. 16-CV-7329 (VEC), 2017 WL 4286319 (S.D.N.Y. Sept. 26,
   2017) ............................................................................................................. 13

*Hall v. Cole*,
   412 U.S. 1 (1973) .......................................................................................... 25

*Hitt v. Arizona Beverage Co.*,
   LLC, No. 08CV809WQH-POR, 2009 WL 4261192 (S.D. Cal. Nov.
   24, 2009) .................................................................................................. 20, 21

*In re Itel Securities Litigation*,
   791 F.2d 672 (9th Cir. 1986) ......................................................................... 25

*Jones v. San Diego Metro. Transit Sys.*,
   No. 14-CV-1778-LAB-KSC, 2016 WL 3952154 (S.D. Cal. July 22,
   2016) ............................................................................................................. 20

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................... 5

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ....................................................................... 12

*Narouz v. Charter Commc'ns*,
   LLC, 591 F.3d 1261 (9th Cir. 2010) .............................................................. 19

DOCUMENT PREPARED
ON RECYCLED PAPER

- iv -

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ..................................................................... 16

*Pistor v. Garcia*,
    791 F.3d 1104 (9th Cir. 2015) ............................................................... 12, 21

*In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*,
    No. 2385, 2015 WL 5853670 (S.D. Ill. Oct. 8, 2015).................................. 17

*Prime Healthcare Servs., Inc. v. Humana Ins. Co.*,
    230 F. Supp. 3d 1194 (C.D. Cal. 2017) (O'Connell, J.)................................ 11

*Rattlesnake Coal. v. E.P.A.*,
    509 F.3d 1095 (9th Cir. 2007) ..................................................................... 12

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*,
    893 F.2d 1109 (9th Cir. 1990) ..................................................................... 15

*Robinson v. United States*,
    586 F.3d 683 (9th Cir. 2009) ....................................................................... 12

*San Francisco Bay Area Rapid Transit Dist. v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055 (N.D. Cal. 2015) .................................... 24

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................................. 15, 19

*SEC v. World Capital Mkt., Inc.*,
    864 F.3d 996 (9th Cir. 2017) ....................................................................... 12

*Shaw v. Jar-Ramona Plaza, LLC*,
    No. 5:13-CV-01563-CAS, 2015 WL 1275294 (C.D. Cal. Mar. 16,
    2015), *aff'd*, 673 F. App'x 774 (9th Cir. 2017) (Snyder, J.) ....................... 15

*Smiley v. Dir., Office of Workers Comp. Programs*,
    984 F.2d 278 (9th Cir. 1993) ......................................................................... 2

*Smith v. T-Mobile USA Inc.*,
    570 F.3d 1119 (9th Cir. 2009) ..................................................................... 15

*Tropp v. W.-S. Life Ins. Co.*,
    381 F.3d 591 (7th Cir. 2004) ....................................................................... 18

*U.S. Parole Commission v. Geraghty*,
    445 U.S. 388 (1980) ..................................................................................... 15

*United States v. Amwest Sur. Ins. Co.*,
    54 F.3d 601 (9th Cir. 1995) ......................................................................... 23

*Velazquez v. GMAC Mortg. Corp.*,
    No. CV 08-05444DDPPLAX, 2009 WL 2959838 (C.D. Cal. Sept.
    10, 2009) (Pregerson, J.).............................................................................. 20

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................... 14

DOCUMENT PREPARED
ON RECYCLED PAPER

*Wininger v. SI Mgmt. L.P.*,
301 F.3d 1115 (9th Cir. 2002) ................................................................. 25

*Wood v. City of San Diego*,
678 F.3d 1075 (9th Cir. 2012) ................................................................. 11

*Wright v. Calumet City, Illinois*,
848 F.3d 814 (7th Cir.), *cert. denied* 138 S. Ct. 102 (2017) ............................ 19

*Yang v. Dar Al-Handash Consultants*,
250 F. App'x 771 (9th Cir. 2007) ............................................................. 13

*Yassan v. J.P. Morgan Chase & Co.*,
708 F.3d 963 (7th Cir. 2013) .............................................................. 13, 22

*Ziese v. Ramada Inns, Inc.*,
463 F.2d 1058 (7th Cir. 1972) ................................................................. 17

DOCUMENT PREPARED
ON RECYCLED PAPER

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

All four of the purported class representatives in this putative class action have settled and fully released all of their claims against Defendants. Plaintiffs settled those claims in 2015 as part of their voluntary participation in the Actos Resolution Program, a global settlement reached in the *Actos Products Liability Multidistrict Litigation*, where this case was transferred in 2012. Consequently, this suit and all claims should be dismissed, with prejudice, on two independent grounds:

(1) the Court does not have subject matter jurisdiction over this suit because Plaintiffs' Releases render all claims moot and there is no live case or controversy before the Court, requiring dismissal under Rules 12(b)(1) and 12(h)(3); and

(2) Takeda's pleaded defenses of settlement, release, waiver, and estoppel bar all of Plaintiffs' claims, requiring judgment on the pleadings under Rule 12(c).

Rules 12(b)(1) and 12(c) both permit consideration of Plaintiffs' executed Releases in dismissing this suit and in granting judgment on the pleadings.

Further, in light of Plaintiffs' and their counsel's continued pursuit of claims fully released more than two years ago, which is a blatant violation of Plaintiffs' binding contracts with Defendants, this Court should grant Takeda equitable relief in the form of all attorneys' fees and costs incurred in litigating this case after Plaintiffs executed their Releases. The Releases themselves include an indemnity provision, where Plaintiffs agreed to "***indemnify, repay and hold harmless***" Defendants "***from any claim or judgment*** . . . arising from or related to Claimant's alleged use of ACTOS Products." Exs. A-D, Releases at 6 (emphasis added).[1] Plaintiff counsel's

---

[1] Exhibits A through H cited in this Motion are attached to the Declaration of David E. Smith, filed with this Motion. Exhibits I through M are attached to the Declaration of Darryl W. Anderson, also filed with this Motion. Pursuant to Fed. R. Civ. P. 5.2 and Local Rule 5.2-1, the Plaintiffs' social-security numbers, dates of birth, street addresses, and other personal information have been redacted to protect Plaintiffs' privacy. Counsel for Takeda maintains possession of the unredacted documents and can, at the Court's request, provide a copy of the complete document. The content

DOCUMENT PREPARED
ON RECYCLED PAPER

apparent advice to their clients to not fulfill their obligation to dismiss this case and to refrain from using the settlement funds in their clients' hands is patently unethical, as its purpose is to protect the lawyers' financial interest in continuing to pursue a class action and is contrary to their clients' interest in utilizing the settlement funds. This Court should not condone attorneys' strategies that are contrary to their ethical duty of undivided loyalty owed to their clients.[2]  Plaintiffs, under guidance of their counsel, have not only violated the release agreements but they are also now on the hook to indemnify Defendants from those claims.

As clearly evidenced by the Releases, in June and July of 2015 – more than two years ago – each Plaintiff contractually agreed to "release and forever discharge" the Defendants in this case from: (a) "all claims. . . arising out of or relating to the purchase, use, manufacture, sale, . . . promotion, marketing, . . . and/or labeling of ACTOS Products;" (b) all claims for "[c]onsumer fraud" and "unfair business practices;" and (c) all claims for statutory damages and "damages or penalties of any kind."  Exs. A-D, Releases at 4-5.  That language explicitly and unambiguously releases all of Plaintiffs' consumer fraud claims in this suit brought under the California Consumer Legal Remedies Act, Unfair Competition Law, False

---

of the Releases and other settlement forms are otherwise publicly posted on the Actos settlement website (https://www.actosofficialsettlement.com/Documents.aspx). Each Release also provides that the release terms may be disclosed "in any action or proceeding between the Parties herein or their attorneys where the existence, enforcement, or terms of the Agreement are at issue."  Exs. A, B, C, D, at 7.

[2] *See, e.g.,* Cal. R. Prof. Cond., *Discussion* ("Attorneys owe the utmost duty of good faith and fidelity to clients. The relationship between an attorney and client is a fiduciary relationship of the very highest character and all dealings between an attorney and client that are beneficial to the attorney will be closely scrutinized with the utmost strictness for unfairness."); *Smiley v. Dir., Office of Workers Comp. Programs*, 984 F.2d 278, 282 (9th Cir. 1993) (recognizing the "duty of undivided loyalty an attorney owes a client"); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (concluding that, where "counsel's goal was to gain an advantage in the other case," that was "sufficient to support a finding of bad faith" for an equitable award of attorneys' fees).

DOCUMENT PREPARED
ON RECYCLED PAPER

Advertising Law, and a claim for unjust enrichment.  [Dkt. No. 1 at 27-34.]

More fundamentally, this suit and the released claims run afoul of Article III of the U.S. Constitution and the related doctrine of mootness.  As the Ninth Circuit has ruled, a putative class representative's private settlement broadly releasing all claims against the defendants – as Plaintiffs have done here – renders the putative class action moot and extinguishes any live "case or controversy," requiring dismissal for lack of subject matter jurisdiction.  *See*, *e.g.*, *Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007) ("'[A] suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no class has been properly certified.' In these situations there is no longer a 'case or controversy' to be decided within the meaning of Article III of the Constitution.").

Plaintiffs' argument that the Releases are not final is contrary to a plain reading of the actual contractual terms.  Under the express terms of the parties' agreement, the Releases were final and "irrevocable" when submitted as part of the Actos Resolution Program.  Ex. I, Master Settlement Agreement ("MSA") § 2.02(D) at 6 (emphasis added); *see also* Exs. A-D, Releases at 3 ("Claimant acknowledges that he/she is bound by the MSA . . . .").  The parties' agreement further provides that Plaintiffs ***may not*** "under ***any circumstances or reason***, regardless of the amount of any individual Settlement Payment, ***withdraw an Opt In Package, request the return of his or her Release*** or Stipulation of Dismissal, or otherwise unilaterally exit the Program."  Ex. I, MSA § 2.06 at 9 (emphasis added).

Aware that their case is sunk, Plaintiffs attempt, contemporaneously with this Motion to Dismiss, to seek leave to amend their complaint to substitute in two new, currently unidentified plaintiffs to take the place of the four current Plaintiffs.  Even putting aside for now the untimely, prejudicial, and futile nature of their proposed amendment (which will be fully briefed in opposition to their motion), Plaintiffs'

motion for leave to amend fails as a matter of law because, as multiple courts in this circuit have found, where the current named plaintiffs' claims become moot *before* class certification, there are no surviving claims (individual or putative class claims) to salvage.  As a result, substitution of a new plaintiff is improper.

Because the Court no longer has subject matter jurisdiction to decide or revive any claims in this case, the Court should dismiss this entire suit with prejudice. Takeda's pleaded affirmative defenses of settlement, release, waiver, and estoppel provide additional grounds to dismiss this suit with prejudice.

## FACTS THAT THIS COURT MAY JUDICIALLY NOTICE OR CONSIDER UNDER RULES 12(B)(1) AND 12(C)

**I.    2012: Plaintiffs filed this putative class action in state court, Defendants pleaded the affirmative defenses of settlement and release, and, after removal and transfer to this Court, the JPML transferred this suit to the Actos MDL.**

On April 18, 2012, Plaintiffs filed this lawsuit in the Superior Court of the State of California as a putative class action with four named plaintiffs: Gary Bernor, William Buntin Jr., Rogelio Sanchez, and Jadine Surette (collectively, "Plaintiffs"). [Dkt. No. 1 at 11, 13-14.]  Plaintiffs bring state consumer fraud and protection claims and allege that, "[a]s a result of the defective nature of Actos" and Defendants' alleged fraudulent concealment of Actos's risks, they and putative class members: (A) "were exposed to increased risk for developing bladder cancer" and "congestive heart failure, and other cardiovascular adverse events" and (B) "developed bladder cancer" and "experienced congestive heart failure and other cardiovascular adverse events."  [Dkt. No. 1 at 20-21.]

On June 1, 2012, Defendants filed a state court answer, denying Plaintiffs' allegations and asserting a number of defenses, including the following:

> 21.    Plaintiffs' claims against Takeda and Eli Lilly are barred, in whole or in part, by laches, waiver, and/or estoppel. . . .

> 34.    To the extent that Plaintiffs' claims have been settled or Plaintiffs will in the future settle with any person or entity with respect to the

DOCUMENT PREPARED
ON RECYCLED PAPER

injuries asserted in the Complaint, the liability of Takeda and Eli Lilly, if any, should be reduced accordingly.

35.   Plaintiffs' claims may be barred, in whole or in part, due to res judicata, collateral estoppels, or by release of claims.

[Dkt. No. 1 at 37, 41, 43.]

On June 4, 2012, Defendants filed a notice of removal.  [Dkt. No. 1 at 1.]

On June 13, 2012, the clerk transferred the case to this Court as a related case to EDCV11-01226-VAP (OPx), a personal injury suit, which also arose from alleged Actos use.  [Dkt. Nos. 1, 10].

On July 9, 2012, before any proceedings in this Court, the Judicial Panel of Multidistrict Litigation ("JPML") transferred this suit to the Western District of Louisiana ("MDL Court") for inclusion in the *Actos Products Liability Multidistrict Litigation* (the "Actos MDL").  [Dkt. No. 11.]

## II.   2013: Plaintiffs in this suit file separate personal injury claims against Defendants in the Actos MDL.

In 2013, all four Plaintiffs filed a separate bundled, multi-plaintiff complaint against Defendants (and other entities) in the Actos MDL, alleging again that they each suffered bladder cancer as a result of their ingestion of Actos and asserting various product liability and fraud claims.  Ex. J, Dkt. No. 1, *Adler v. Takeda Pharmaceuticals USA, Inc.*, MDL No. 6:11-md-2299, No. 6:13-cv-02031-RFD-PJH (W.D. La. June 14, 2013).[3]  Just as in this suit, Plaintiffs claimed that Defendants fraudulently concealed Actos's alleged bladder cancer risks.  Ex. J at 42-43.

## III.   2015: The Actos Resolution Program is created, allowing claimants to voluntarily opt in to the program and release their Actos claims.

On April 28, 2015, the defendants and plaintiffs' counsel in the Actos MDL

---

[3] With respect to the exhibits that are also matters of public record, the Court can take judicial notice of them.  *See*, *e.g.*, Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may take judicial notice of 'matters of public record.'").

DOCUMENT PREPARED ON RECYCLED PAPER

entered into a Master Settlement Agreement ("MSA") that created a global settlement program ("Actos Resolution Program") for all eligible Actos personal injury claims without any admission of liability.  Ex. I, MSA at 1-2; *see also In re Actos (Pioglitazone) Prod. Liab. Litig.*, -- F. Supp. 3d -- , No. 6:11-MD-2299, 2017 WL 3033134, at *1, *13 (W.D. La. July 17, 2017).  The Actos Resolution Program was open to all claimants who had filed a case as of April 28, 2015, alleging use of Actos before December 1, 2011, and alleging that they had been diagnosed with bladder cancer as a result of Actos use, as well as potential claimants, who met certain criteria. Ex. I, MSA at 3-4.  Plaintiffs in this case fell into the first category of eligible claimants, the "Filed Claimants."  Ex. I, MSA at 4; [Dkt. No. 1 at 13-14].

Under the MSA, however, eligible claimants were not automatically enrolled in the Actos Resolution Program, but had to take additional, affirmative steps on their own to participate.  In particular, they had to execute a "Notice of Intent to Opt In Form for Filed Claims" ("Opt-in Notice") and a "Release."  Ex. I, MSA at 5. According to the MDL Court, 99.4% of known claimants with bladder cancer, nearly 11,000 claimants, "voluntarily agreed to and [] participat[ed] in the Global Settlement Program."  *In re Actos*, 2017 WL 3033134, at *13.

## IV.   2015:  Plaintiffs voluntarily opt in to the Actos Resolution Program and execute broad releases of all Actos claims.

In June and July of 2015, more than two years ago, all four Plaintiffs in this suit, represented and advised by their own independent counsel, decided to opt in to the Actos Resolution Program, by submitting executed Opt-in Notices and Releases. Exs. A-D, Releases; Exs. E-H, Opt-in Notices.

The "Release," personally executed by each Plaintiff, incorporates all terms and conditions of the MSA and sets forth each Plaintiff's agreement to "***release and forever discharge*** the Released Persons" – including Defendants here  – "from all Settled Claims."  Exs. A-D, Releases at 4-5 (emphasis added).  "Settled Claims" is defined broadly as:

*[A]ny and all claims, causes of action, demands, damages, costs, expenses, liabilities or other losses*, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, including any future wrongful death claim, *arising out of or relating to the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval, and/or labeling of ACTOS Products*, alone or in combination with any other substance, or any other transaction between Claimant and Released Persons relating to Claimant's alleged use of ACTOS Products. . . . These "Settled Claims" include, without limitation and by way of example, all ACTOS Products-related claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, including but not limited to: . . .

    (b) Compensatory damages, punitive, exemplary, statutory and other multiple damages or penalties of any kind; . . .

    (e) Consumer fraud, refunds, unfair business practices, deceptive trade practices, unfair and deceptive acts and practices, fraudulent inducement, and other similar claims whether arising under statute, regulation, or judicial decision; . . .

    (h) Economic or business losses or disgorgement of profit; . . .

Exs. A-D, at 4-5 (emphasis added).  Plaintiffs also agreed that:

The scope of this Release is intended to include *any liability whatsoever* that:

    (a) Arises directly or indirectly out of or is in any manner related to any alleged defect in ACTOS Products or the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of ACTOS Products;

    (b) Arises directly or indirectly from the actions of Released Persons or any other person involved in the manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of ACTOS Products and from the actions of any person affiliated with or representing the Released Persons;

    (c) Arises directly or indirectly out of or is in any manner related to any alleged representations, promises, statements, warranties (express or implied) or guarantees given and made by any of the Released Persons or anyone affiliated with any Released Person in connection with ACTOS Products;

    (d) Arises directly or indirectly out of or is in any manner related to Claimant's alleged use of ACTOS Products, and any injuries or damages resulting directly or indirectly therefrom; . . .

DOCUMENT PREPARED
ON RECYCLED PAPER

> (f) Arises directly or indirectly out of or is in any manner related to any of the matters, occurrences or transactions which could have been asserted in connection with Claimant's alleged use of ACTOS Products, including, without limitation, any and all claims for relief and damages . . . .

Exs. A-D, Releases at 5 (emphasis added).  Plaintiffs agreed that the law of Illinois (where Takeda is principally located) would govern the interpretation of both the Release and the MSA.  Exs. A-D, Releases at 7; Ex. I, MSA at 48.

## V.   2015:  Plaintiffs' Releases and Opt-In Notices are irrevocable and cannot be unilaterally withdrawn.

In executing the Releases, Plaintiffs agreed that the Releases incorporated all terms and conditions of the MSA and that Plaintiffs are "bound by the MSA."  Exs. A-D, Releases at 3.  The MSA, in turn, provides that "[s]ubmission of the Opt In Package for Filed Claims," which includes the Release and Opt-in Notice:

> (i) is ***irrevocable***; (ii) binds the Claimant submitting the forms to the terms and conditions of this Agreement; and (iii) constitutes affirmative acceptance of the jurisdiction of the Special Master and the MDL Court . . . for all matters and decisions relative to this Agreement.

Ex. I, MSA § 2.02(D) at 6 (emphasis added).  The MSA further provides that:

> **Section 2.06    Program Participation is Exclusive and Irrevocable**
>
> By submitting [an Opt-in Notice], all enrolled Program Participants covered by such Opt In Forms, and their counsel, shall be deemed to have agreed to be bound by all of the terms and conditions of this Agreement. A Program Participant may only pursue his or her claim in the Program and ***may not pursue her claim in any court of law or other proceeding***. . . . ***No enrolled Program Participant may under any circumstances or reason***, regardless of the amount of any individual Settlement Payment, ***withdraw an Opt In Package***, ***request the return of his or her Release*** or Stipulation of Dismissal, or otherwise ***unilaterally exit*** the Program.

Ex. I, MSA § 2.06 at 9 (emphasis added).  Each Plaintiffs' Opt-in Notice also includes his or her acknowledgment that "such election is ***irrevocable***" and that "Takeda ***shall be entitled to present the Release*** submitted herewith in any relevant action or proceeding."  Exs. E-H, Opt-in Notices at 2 (emphasis added).

Nowhere in the MSA, the Releases, or Opt-in Notices is there any provision

DOCUMENT PREPARED ON RECYCLED PAPER

1   hinging or conditioning the finality or revocability of the Releases on any other

2   circumstance, such as payment or deposit of settlement funds.   In any event,

3   settlement funds have been transmitted via wire transfer to the attorneys for three of

4   the four Plaintiffs – Gary Bernor, Rogelio Sanchez, and Jadine Surette.   Declaration

5   of D. Smith ¶ 13.   The other Plaintiff, William Buntin Jr., has not received his

6   settlement funds due to his pending personal bankruptcy case, Case No. 1:2014-bk-

7   11860 (Bankr. N.D. Miss. May 14, 2014).   The Claims Administrator cannot pay the

8   settlement proceeds until it receives an order from the bankruptcy court authorizing

9   payment or a letter from the U.S. Trustee indicating that he/she is waiving any interest

10   in the claim as an asset of the bankruptcy estate.   Declaration of D. Smith ¶ 13.

**VI.   2015:   Plaintiffs agreed to "indemnify, repay, and hold harmless" Defendants from any claim arising from or related to their use of Actos.**

All Plaintiffs' Releases also include "**Indemnification**" provisions, whereby Plaintiffs agreed that they would "indemnify, repay and hold harmless" Defendants "from any claim or judgment . . . arising from or related to [their] alleged use of ACTOS Products."   Exs. A-D, Releases at 6.

**VII.   2017:   Having fully released all Actos claims two years earlier, Plaintiffs try for first time in 2017 to amend their complaint to substitute in new plaintiffs.**

On August 24, 2017 – recognizing their lack of standing to proceed as named plaintiffs in this suit – Plaintiffs filed an opposed motion with the MDL Court for leave to amend their complaint to substitute in a new class representative ("First Motion to Amend").   Ex. K, Dkt. No. 208, *Bernor v. Takeda Pharmaceuticals America, Inc.*, MDL No. 6:11-md-2299, No. 6:12-cv-01795-RFD-PJH (W.D. La. Aug. 24, 2017).   In that First Motion to Amend, Plaintiffs openly admitted that "[a]ll currently named Plaintiffs have *settled* their Actos-related injury claims" and that "[t]he currently named Plaintiffs in this class action have resolved their Actos-related injury claims in MDL 2299, *impairing* their ability to serve as class representatives in this lawsuit."   Ex. K at 2 (emphasis added).

Plaintiffs' proposed amendment in their First Motion to Amend, however, did not merely propose a new substitute plaintiff.  Unlike the current Plaintiffs, the proposed plaintiff did not allegedly develop bladder cancer as a result of his use of Actos.  Ex. L at 3, Dkt. No. 208-1.  Suffering no actual personal injury, the proposed plaintiff, as alleged, only "relied upon false statements contained in Defendants' marketing materials related to safety and efficacy in deciding to use, and continuing to use, Actos." *Id.*  Moreover, while three of the four current Plaintiffs allegedly reside within the Central District of California,[4] the new proposed plaintiff resided outside of the district.[5]  As Plaintiffs themselves recognized in the First Motion to Amend, substituting in that out-of-district plaintiff would make venue over this case improper in the Central District of California.  28 U.S.C. § 1391(b)(2); Ex. K at 1 ("the outcome of this Motion will determine *where* this case is transferred . . .").

On September 26, 2017, the MDL Court denied Plaintiffs' First Motion to Amend as moot, suggesting, instead, that the JPML remand this case to this Court for further proceedings.  Ex. M, Dkt. No. 210.

On October 2, 2017, the JPML remanded the case to this Court.  [Dkt. No. 15.]

On December 4, 2017, Plaintiffs informed the Court of their intention to again move for leave to file a first amended complaint, removing the four current Plaintiffs and substituting in two new unidentified putative class representatives.  [Dkt. No. 33 at 3].  Defendants oppose that amendment and substitution for the reasons set forth herein, and in Takeda's forthcoming Opposition to Plaintiffs'' motion to amend that Plaintiffs will be filing concurrently with this Motion to Dismiss.  [*Id.*]

On December 11, 2017, the Court entered a briefing schedule for this Motion

---

[4] As alleged, the four current Plaintiffs reside or resided in San Bernardino, Santa Barbara, Los Angeles, and Sutter Counties in California – the first three of which are in this district.  [Dkt. No. 1 at 13-14]; *see also* https://www.cacd.uscourts.gov/jurors/jurisdiction (listing counties in the district).
[5] The proposed new plaintiff allegedly resides in San Joaquin County, which is not in this district.  Ex. L at 3.

DOCUMENT PREPARED
ON RECYCLED PAPER

1  to Dismiss and Plaintiffs' second motion to amend, both of which will be filed on

2  December 18, 2017, and heard on January 29, 2018.  [Dkt. No. 37.]

3  **LEGAL STANDARD**

4  **I.  A Rule 12(b)(1) and 12(h)(3) motion to dismiss can be brought at any time and can rely on extrinsic evidence.**

5

6  "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction . . .

7  may be made at any time," even if defendants have filed a responsive pleading or

8  responsive motion.  *In re Apple Iphone Antitrust Litig*., 846 F.3d 313, 319 (9th Cir.

9  2017) ("Apple's earlier Rule 12 motions to dismiss thus in no way foreclosed its late-

10  filed motion to dismiss Counts I and II for lack of Article III standing."); *see also*

11  *Davis v. United States*, No. EDCV07481VAPOPX, 2009 WL 10674302, at *2 n.1

12  (C.D. Cal. Sept. 4, 2009) (Phillips, J.) ("Plaintiffs argue the Government's Motion is

13  procedurally defective because it was not brought before the Government filed a

14  responsive pleading.  A Motion pursuant to Rule 12(b)(1) may be brought at any

15  time, however.").  "[T]he deadline for making a Rule 12(b)(1) motion to dismiss for

16  lack of subject matter jurisdiction is prolonged by Rule 12(h)(3) . . . . Indeed, '[t]he

17  objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a

18  party, or by a court on its own initiative, at any stage in the litigation, even after trial

19  and the entry of judgment.'"  *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th

20  Cir. 2012) (quoting *Arbaugh v. Y & H Corp*., 546 U.S. 500, 506 (2006)).

21  Furthermore, it is well-established that, when a defendant asserts a factual

22  attack under Rule 12(b)(1) – as Takeda asserts here[6] – a "district court may look

23  beyond the pleadings to the parties' evidence without converting the motion to

24  _____

25  [6] The Ninth Circuit recognizes two types of subject matter jurisdiction challenges –

26  "facial" and "factual" attacks – which determine the scope of the court's review.
   *Edison*, 822 F.3d at 517; *Prime Healthcare Servs., Inc. v. Humana Ins. Co*., 230 F.

27  Supp. 3d 1194, 1202 (C.D. Cal. 2017) (O'Connell, J.).  Takeda asserts a factual
   attack here, challenging the underlying factual truth of Plaintiffs' allegation that they have

28  Article III standing to bring this suit.

dismiss into one for summary judgment." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016); *see also U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus.*, Inc., 720 F.3d 1174, 1175 (9th Cir. 2013) ("As is proper with a factual attack in a 12(b)(1) motion, Defendants submitted materials outside the pleadings . . . .").

   "Once challenged, the party asserting subject matter jurisdiction" – Plaintiffs here – "has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007)). Specifically, "[w]hen the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context," and the "plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal citations omitted). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22; *see also SEC v. World Capital Mkt., Inc.*, 864 F.3d 996, 1004 (9th Cir. 2017) (quoting same). But, as the Ninth Circuit qualifies, "[n]o presumptive truthfulness attaches to plaintiff's allegations." *Robinson*, 586 F.3d at 685; *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (same).

   Takeda therefore moves to dismiss under Rules 12(b)(1) and 12(h)(3) and relies upon competent evidence, attested to in the attached declarations.

## II.   A Rule 12(c) motion for judgment on the pleadings can be brought after a defendant answers the complaint and can rely on outside evidence of a release where pleaded as an affirmative defense in the answer.

   Under Rule 12(c), a defendant "may move for judgment on the pleadings" even after it has filed a responsive pleading or motion. Fed. R. Civ. P. 12(c). Although Rule 12(d) generally limits Rule 12(c) and Rule 12(b)(6) motions to matters within the pleadings, federal courts have not hesitated to consider matters outside of the pleadings when those matters are attached to or referenced in the pleadings, particularly where the pleadings reference a contract at issue between the parties. In

DOCUMENT PREPARED
ON RECYCLED PAPER

allowing the consideration of contracts "beyond the pleadings" under Rule 12(c), the Ninth Circuit has stated: "When considering a judgment on the pleadings, a court should not blindly accept the allegations in the pleadings as true if these allegations are contradicted by uncontested facts set forth in (1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007). Where a contract falls fits any one of those categories, a court can consider those materials without converting a Rule 12(c) motion into a motion for summary judgment. *Id.*

Specifically with respect to release arguments raised under Rule 12(c), a number of courts have found it proper to consider a contractual release under Rule 12(c) when the defendant has affirmatively pleaded that defense, even if it has not attached the release to its answer. *See, e.g.*, *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013) ("A release is an affirmative defense under Fed. R. Civ. P. 8(c)(1). Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)."); *Gracia v. City of New York*, No. 16-CV-7329 (VEC), 2017 WL 4286319, at *1 n.2 (S.D.N.Y. Sept. 26, 2017) ("The general release does not appear to have been filed with the Queens County Supreme Court as part of Plaintiff's tort case . . . . Nevertheless, because the Court grants the City Defendants' motion for leave to amend their answer to include the defense of 'waiver and release,' the Court may consider the general release as incorporated by reference in the City Defendants' answer in deciding the City Defendants' motion for judgment on the pleadings."); *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 808 n.6 (S.D. Ill. 2006) ("A.G. Edwards submitted the release to the Court not as an exhibit to its answer but as an attachment to its request for judgment on the pleadings. Nevertheless, the Court concludes that the release document is properly before the Court. . . . In this instance A.G. Edwards asserted the release as an affirmative defense, the parties do not dispute the authenticity of the release or the fact that

Boeckman executed it, and A.G. Edwards has requested judgment on the pleadings on the basis of the release. Therefore, the Court will consider the release document in evaluating A.G. Edwards's Rule 12(c) motion.").

Takeda therefore moves for judgment on the pleadings under Rule 12(c) and relies upon its pleaded affirmative defenses of settlement and release, waiver, and estoppel, and relies upon Plaintiffs' executed Releases, filed with this Motion.

## ARGUMENT

### I. Plaintiffs' released claims should be dismissed with prejudice for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3).

As Plaintiffs themselves have recognized, their settlement broadly releasing all Actos claims against Defendants means there is no live dispute between the parties, and they lack standing to bring this putative class action.  Under well-established principles of subject matter jurisdiction, this suit is moot and should be dismissed with prejudice under Rules 12(b)(1) and 12(h)(3).

### A. A suit is moot and lacks the required live case or controversy if the plaintiff has settled and released all claims.

A "suit should be dismissed under Rule 12(b)(1)" for lack of subject matter jurisdiction when the suit is "brought by a plaintiff without Article III standing." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  The same is true when a suit becomes moot "[b]ecause standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III" and "are properly raised in a motion to dismiss under [Rule] 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1544 (9th Cir. 1994) ("The district court ruled that the claims were moot . . . . It therefore dismissed the complaint for lack of jurisdiction under [Rule] 12(b)(1).").

"The Supreme Court has described 'mootness as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement

of the litigation (standing) must continue throughout its existence (mootness).'"
*Blair v. Shanahan*, 38 F.3d 1514, 1518-19 (9th Cir. 1994) (quoting *U.S. Parole
Commission v. Geraghty*, 445 U.S. 388, 397 (1980)). It is not enough that there may
have been a live case or controversy when the case was first filed. *Id.* at 1518. If a
plaintiff loses standing at any point in the litigation, the suit becomes moot, and the
court must dismiss the case because it cannot exercise subject matter jurisdiction. *Id.*

In the Ninth Circuit, as in other federal courts, a plaintiff's private settlement
releasing all underlying claims extinguishes any subject matter jurisdiction. No live
"case or controversy" exists, and the suit is moot and must be dismissed for lack of
subject matter jurisdiction. *See*, *e.g.*, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550,
556–57 (9th Cir. 2010) (dismissing the claims of a plaintiff who "entered into a
settlement agreement in which she agreed to relinquish 'any claims arising out of or
that could have arisen out of the allegations set forth' in her state-court case. . . .
[b]ecause [she] no longer has any cognizable interest in the suit"); *Smith v. T-Mobile
USA Inc.*, 570 F.3d 1119, 1123 (9th Cir. 2009) ("Because the plaintiffs voluntarily
settled all of their claims after the district court's denial of certification, they have
failed to retain a personal stake in the litigation and their case is moot. Accordingly,
we dismiss the appeal for lack of jurisdiction."); *Riverhead Sav. Bank v. Nat'l Mortg.
Equity Corp.*, 893 F.2d 1109, 1112 (9th Cir. 1990) ("[I]f there is a complete
settlement of the underlying cause of action the case is moot."); *Shaw v. Jar-Ramona
Plaza, LLC*, No. 5:13-CV-01563-CAS, 2015 WL 1275294, at *6 (C.D. Cal. Mar. 16,
2015), *aff'd*, 673 F. App'x 774 (9th Cir. 2017) (Snyder, J.) ("[W]here a settlement
agreement has released defendant 'from any liability for the claims in this action, no
'case or controversy' remains and this Court is without subject matter jurisdiction to
reach the merits.' Indeed, logic suggests that the removal of a plaintiff's standing to
sue is the precise purpose of a settlement agreement."); *Garcia v. Lane Bryant, Inc.*,
No. 1:11CV01566 LJO DLB, 2012 WL 293544, at *4 (E.D. Cal. Jan. 31, 2012)
("Plaintiff has voluntarily waived, released and settled all of his claims . . . . As a

result, there is no live 'case or controversy' to be decided within the meaning of Article III of the United States Constitution and this Court lacks subject matter jurisdiction.").

Under Plaintiffs' Releases, enforceable and irrevocable, no live dispute exists, and their claims are moot and must be dismissed under Rules 12(b)(1) and 12(h)(3).

## B.   The Releases are enforceable under Illinois law.

Represented and advised by counsel, Plaintiffs each executed the Opt-in Notice and Release and agreed to be bound by all terms of the MSA.  Exs. A-H. Plaintiffs have not contended, nor could they, that their executed Releases are invalid or unenforceable under Illinois law.

In the Release and the MSA, each Plaintiff agreed that Illinois law would govern the interpretation of both contracts.  Exs. A-D, Releases at 7; Ex. I, MSA at 48.  Each Release further dictates the application of Illinois law "without regard to any otherwise applicable principles of conflicts of law or choice of law rules."  Exs. A-D, Releases at 7.  Even under the California choice-of-law principles that would otherwise apply in this diversity suit, the parties' choice of Illinois law in the Releases and MSA would govern the interpretation of the contracts.  *See, e.g., Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

"Under Illinois law, a settlement is valid if there is an offer, acceptance, and a meeting of the minds."  *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010).  A "meeting of the minds" occurs where there is "mutual assent to all material terms." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016).  "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry."  *Id.*

The written records in this case – the Releases and Opt-in Notices, which are attached to this Motion and authenticated by declaration – provide objective evidence of Defendants' offer of compromise, Plaintiffs' acceptance, and the parties' meeting of the minds on the material terms laid out in the executed documents.  Exs. A-D, E-

DOCUMENT PREPARED
ON RECYCLED PAPER

H.  The Releases are, therefore, valid and enforceable for purposes of determining subject matter jurisdiction, or lack thereof, and determining Takeda's assertion of its affirmative defenses, discussed further below.

### C.    The Releases are final and irrevocable.

Plaintiffs' Releases are also "irrevocable," as of the date they were submitted as part of the Actos Resolution Program, and cannot, "under any circumstance or reason," be unilaterally withdrawn or voided.  Ex. I, MSA § 2.02(D) at 6, § 2.06 at 9; *see also* Exs. E-H, at 2.  Nor, as Plaintiffs have suggested they will argue, is the irrevocability or finality of the Releases contingent on the unidentified condition of Plaintiffs' deposit of settlement funds.  Nothing in the MSA or the Releases supports such argument.  Instead, it is commonplace in settlement programs, like the Actos Resolution Programs, for claimants to execute irrevocable opt-ins and releases that are final when executed and that "extinguish[]" all claims.  *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 2385, 2015 WL 5853670, at *3 (S.D. Ill. Oct. 8, 2015) (applying Illinois law) ("[I]t is evident Mr. Ougle's claims (and the claims of Movants) were extinguished as a result of his irrevocable opt-in to the settlement program and his execution of a release of all claims."); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) (holding that a "case or controversy" no longer existed where a party signed a covenant that "unconditionally and irrevocably" withdrew its claims); *Ziese v. Ramada Inns, Inc.*, 463 F.2d 1058, 1060 (7th Cir. 1972) ("Nowhere is profitability made a condition precedent to exercising the options. In fact, as above pointed out, the agreement is expressly made irrevocable.").

### D.    The Releases are unambiguous and include all claims in this case, rendering this suit moot and extinguishing any live "case or controversy," and requiring dismissal with prejudice.

The Releases clearly and unambiguously release all claims and allegations raised by Plaintiffs in this suit.

- 17 -

DOCUMENT PREPARED
ON RECYCLED PAPER

1      "In construing a settlement agreement under Illinois law, the Seventh Circuit

2 applies a two part inquiry identical to the construction of any contract: (1) examine

3 the plain language of the applicable provisions at issue; and (2) determine if the

4 contract terms are ambiguous." *Cent. States, Se. & Sw. Areas Pension Fund v. Art*

5 *Pape Transfer, Inc.*, 881 F. Supp. 1168, 1172 (N.D. Ill. 1995), *aff'd*, 79 F.3d 651 (7th

6 Cir. 1996).  "[A] contract is not ambiguous 'if the court can determine its meaning

7 without any guide other than a knowledge of the simple facts on which, from the

8 nature of language in general, its meaning depends,'" and a "contract is not

9 ambiguous simply because the parties disagree about its meaning." *Id.*  "When a

10 release is unambiguous" or "clear and explicit, the court must enforce the release as

11 written" and "without looking to parol evidence." *ADM All. Nutrition, Inc. v. SGA*

12 *Pharm Lab, Inc.*, -- F.3d – , No. 16-2331, 2017 WL 6378264, at *3 (7th Cir. Dec. 14,

13 2017)*; Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004).

14      The contractual Releases here unambiguously release the claims Plaintiffs

15 assert in this case.  Each Plaintiff agreed to "release and forever discharge"

16 Defendants in this case from "all claims" and "any liability whatsoever" "arising out

17 of or relating to the purchase, use, manufacture, sale, design, distribution, promotion,

18 marketing, clinical investigation, testing, administration, regulatory approval, and/or

19 labeling of ACTOS Products."  Exs. A-D, Releases at 4-5.  Plaintiffs also expressly

20 released all claims for "[c]onsumer fraud, . . . unfair business practices, deceptive

21 trade practices, unfair and deceptive acts and practices;" for statutory damages and

22 "damages or penalties of any kind;" and for "[e]conomic or business losses or

23 disgorgement of profit," among other claims.  Exs. A-D, Releases at 4-5.  As alleged,

24 Plaintiffs' California consumer fraud and unfair business practices claims in this

25 case, all arising from allegations about Plaintiffs' use and purchase of Actos and

26 Defendants' sale, promotion, and marketing of Actos, fit squarely within those broad

27 releases.  [*See* Dkt. No. 1 at 20-21, 27-34.]

28      Plaintiffs' Releases also contain **no** limitations, carve-outs, or retention of any

personal stake or interest in any of the putative class claims in this case.  Under Illinois law, a release need not specifically list all claims released; rather, a broadly worded release is construed as just that, broadly to cover all claims contemplated within the language agreed to by the parties, including putative class claims.  *ADM All. Nutrition, Inc*., -- F.3d -- , 2017 WL 6378264, at \*4; *see also Wright v. Calumet City, Illinois*, 848 F.3d 814, 817 (7th Cir.), *cert. denied* 138 S. Ct. 102 (2017) ("[A] named plaintiff's unqualified release of claims relinquishes not only his interest in his individual claims but also his interest in class certification.").

The Ninth Circuit has also held that – where a putative class representative executes a broadly worded release that does not expressly retain a "personal stake" in the putative class action nor expressly limit the release to only individual claims – the putative class representative (like each Plaintiff here) "has bargained away not only her individual claims" but also any putative class claims, which are "plainly moot" and "must be dismissed."  *Sanford*, 625 F.3d at 556–57; *see also Narouz v. Charter Commc'ns*, LLC, 591 F.3d 1261, 1264 (9th Cir. 2010) ("In order to retain such a 'personal stake,' a class representative cannot release any and all interests he or she may have had in class representation through a private settlement agreement. Conversely, a settlement agreement that specifically provides that the class representative is solely releasing individual claims may permit the class representative to retain a 'personal stake' in the class claim."); *Anchor Capital Advisors*, 498 F.3d at 924 ("'[A] suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no class has been properly certified.' In these situations there is no longer a 'case or controversy' to be decided within the meaning of Article III of the Constitution.").

By executing the Releases, all Plaintiffs in this case have voluntarily relinquished any interest or stake in their individual and putative class claims underlying this suit, extinguishing any live "case or controversy" and requiring

dismissal with prejudice of this entire suit for lack of subject matter jurisdiction.

### E. Because Plaintiffs' claims became moot before class certification, no cognizable claims exist for the Court to revive, and dismissal should be granted with prejudice and leave to amend should be denied.

Plaintiffs' attempt, before class certification, to substitute in two new (currently unidentified) plaintiffs does not save this putative class action from dismissal with prejudice.

Courts in this district and circuit have denied leave to substitute in new named plaintiffs in precisely this situation. Where a putative class representative's claims become moot *before* class certification, there are no cognizable claims over which a court can continue to assert subject matter jurisdiction because the putative class representative's claims have *not*, at that stage, acquired a legal status beyond the plaintiff's own individual mooted claims, so it is only proper for a court to dismiss the suit. *See*, *e.g.*, *Jones v. San Diego Metro. Transit Sys.*, No. 14-CV-1778-LAB-KSC, 2016 WL 3952154, at *5 (S.D. Cal. July 22, 2016) ("Ordinarily, substitution of class representatives is permitted only *after* a class has already been certified. This is because 'once certified, a class acquires a legal status separate from that of the named plaintiffs,' such that a named plaintiff's loss of standing does 'not necessarily call for the simultaneous dismissal of the class action, if members of that class might still have live claims.' However, '[that] line of reasoning is inapposite here, where no class has yet been certified.' The same result follows when a plaintiff's claims become moot. . . . Plaintiffs request to substitute is DENIED."); *Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444DDPPLAX, 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009) (Pregerson, J.) (denying the plaintiffs' motion for leave to file an amended complaint to substitute in new proposed named plaintiffs before class certification of a putative class action); *Garcia v. Lane Bryant, Inc.*, No. 1:11CV01566 LJO DLB, 2012 WL 293544, at *4–6 (E.D. Cal. Jan. 31, 2012) (same); *Hitt v. Arizona Beverage Co.*, LLC, No. 08CV809WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (same).

1    In *Garcia v. Lane Bryant, Inc.*, as in this case, the putative class representative
2    settled his claims against the defendant in a separate proceeding, with different
3    counsel, and then filed a motion for leave to amend his complaint to substitute in a
4    new named plaintiff in the current case.  2012 WL 293544, at *1.  The *Garcia* court
5    first determined that because the "Plaintiff has voluntarily waived, released and
6    settled all of his claims . . . there is no live 'case or controversy' to be decided within
7    the meaning of Article III of the United States Constitution and this Court lacks
8    subject matter jurisdiction."  *Id.* at *4.  With respect to the proposed new class
9    representative, citing multiple opinions from other courts, the court held that
10   "[w]here a named representative has settled his or her individual claims prior to class
11   certification and there is no longer a 'case or controversy,' ***leave to amend would be***
12   ***improper***" because such situation was materially distinguishable from a case where
13   a class had been certified and "the class acquires legal status separate from that of the
14   named plaintiffs."  *Id.* at *4-5 (emphasis added).  The *Garcia* court accordingly
15   denied the plaintiff's motion for leave to amend his complaint.  *Id.* at *6.

16   Likewise, in *Hitt v. Arizona Beverage Co., LLC*, the putative class
17   representative sought to withdraw for "personal reasons" and moved to substitute in
18   a new named plaintiff.  2009 WL 4261192, at *4.  The California district court denied
19   the motion, stating that "[w]hen deciding whether substitution of plaintiffs may be
20   permitted after the named plaintiff's claims are voluntarily dismissed or otherwise
21   become moot, the ***paramount consideration is whether the putative class has been***
22   ***certified***."  *Id.* at *5 (emphasis added).  Where there has been no class certification
23   (as in this case), the court explained, "the putative class has not 'acquire[d] a legal
24   status separate from that of the named plaintiff[ ],'" and the plaintiffs' decision to no
25   longer prosecute the action effectively extinguishes Article III standing and subject
26   matter jurisdiction over the entire case, rendering any leave to amend inappropriate.
27   *Id.* at *5 (quoting *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331,
28   1336 (11th Cir. 2003)).

As a result of Plaintiffs' voluntary settlement and release of all claims before class certification, there are no live individual or putative class claims in this case over which the Court can exercise subject matter jurisdiction. As the cases show, it is, therefore, improper to allow Plaintiffs leave to concoct subject matter jurisdiction where none exists. The Court should deny Plaintiffs leave to amend and grant dismissal with prejudice on these grounds, along with other grounds to be more fully briefed in opposition to Plaintiffs' motion for leave to amend.

## II. Takeda's pleaded affirmative defenses of settlement, release, waiver, and estoppel bar all of Plaintiffs' claims, requiring judgment on the pleadings under Rule 12(c).

Providing additional, independent bases for dismissing this suit with prejudice, Defendants have affirmatively pleaded the defenses of settlement, release, waiver, and estoppel. [Dkt. No. 1 at 37, 41, 43.] Given Plaintiffs' release of all claims in this case, as shown above, those pleaded defenses bar this action in its entirety.

### A. Plaintiffs' settlement and release require dismissal of this suit.

"Settlement and release is an affirmative defense" that is appropriately raised at the pleadings stage and on a Rule 12(c) motion. *In re Cellular 101, Inc*., 539 F.3d 1150, 1155 (9th Cir. 2008); *see also* Fed. R. Civ. P. 8(c); *Yassan*, 708 F.3d at 975-76. Where a settlement agreement and "broad release of claims" are enforceable under the applicable contract laws – as in this case, as shown above – the Ninth Circuit has found that the affirmative defenses of release and waiver bar a plaintiff from pursuing any released claims against the same defendants with which he previously settled. *See*, *e.g.*, *Gonda v. Permanente Med. Grp., Inc*., 691 F. App'x 397, 399 (9th Cir. 2017) ("[U]nder the settlement agreement, Gonda signed a broad release of claims and expressly waived his right to bring any and all claims and causes of action arising under ERISA against TPMG and its related persons and entities. Based on this waiver, the district court found that Gonda's current action against TPMG and the TPMG Plan was barred. . . . we affirm.").

This is a cut-and-dry case of release. As Plaintiffs themselves openly admit, they "settled their Actos-related injury claims" with Defendants. Ex. K at 2. And their Releases are enforceable, irrevocable, and unambiguous in including "all claims" asserted in this case. *Supra* at 16-20. The defense of release bars this case.

### B.   Plaintiffs' intentional waiver of all Actos claims bars this suit.

Even setting aside the enforceable, irrevocable nature of the Releases, Plaintiffs have waived all rights to continue to pursue this suit, through their express abandonment and discharge of all Actos-related claims against Defendants and through their own conduct evidencing such intentional abandonment.

The Ninth Circuit defines "waiver" as the "intentional relinquishment or abandonment of a known right or privilege" that "can preclude the assertion of legal rights." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016). Waiver can be implied "where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved." *Id.* (quoting *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602–03 (9th Cir. 1995)).

Plaintiffs' express promises and actions for the past two years – their voluntary participation in the Actos Resolution Program; execution of their Releases and Opt-in Notices; receipt of settlement funds; and past representations made about their settlements in filings to the MDL Court – all evidence Plaintiffs' intentional abandonment of their rights to continue to pursue any claims against Defendants related to their use and purchase of Actos. Exs. A-H; Ex. K at 2; Declaration of D. Smith ¶ 13. The affirmative defense of waiver bars this suit in its entirety.

### C.   Equitable and promissory estoppel also bar the claims in this suit.

The doctrine of equitable estoppel, also known as promissory estoppel, "is founded on concepts of equity and fair dealing," and "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *San*

*Francisco Bay Area Rapid Transit Dist. v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1070 (N.D. Cal. 2015). Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006).

By opting in to the Actos Resolution Program and executing the Releases, Plaintiffs intentionally led Defendants to believe that they were, in fact, releasing all Actos-related claims against Defendants. Exs. A-H. Defendants relied upon those representations, Plaintiffs enrolled in the Program to claim the benefits of the settlement, and settlement funds paid by Takeda were sent to Plaintiffs' counsel. Declaration of D. Smith ¶ 13. Yet, Plaintiffs are now fighting to avoid the Releases they bargained for by seeking to drag this suit out as long as possible, so that Plaintiffs' counsel can substitute new plaintiffs and piggyback off of Plaintiffs' extinguished, mooted claims. These tactics, purposefully violating binding contractual agreements, are egregious and should not be tolerated. Plaintiffs should be estopped from pursuing this suit and, as shown below, the Court should also award Takeda fees and costs incurred in litigating the released claims.

## III.   The Court should issue an equitable award of attorneys' fees and costs based on Plaintiffs' bad faith refusal to dismiss their released claims.

The current individual Plaintiffs in this case have unquestionably settled and released all claims against Defendants arising from their use and purchase of Actos, and they have been paid as part of that settlement (or will be paid, in William Buntin's case, when the bankruptcy court or U.S. Trustee authorizes). Declaration of D. Smith ¶ 13. Plaintiff counsel's refusal to voluntarily dismiss those plaintiffs and their claims from this case – in breach of the Releases and triggering the Releases' indemnity provisions and for the sole purpose of gaining an advantage for other cases and potential plaintiffs – is precisely the bad faith and improper purpose that justifies an equitable award of attorneys' fees and costs that should be issued in this case.

It is well-established that federal courts "have the power to award attorneys'

fees 'in the exercise of their equitable powers,'" or "when the interests of justice so require." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002); *Hall v. Cole*, 412 U.S. 1, 4-5 (1973). As the Supreme Court has stated, "federal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery," and "[t]hus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall*, 412 U.S. at 5; *see also Wininger*, 301 F.3d at 1120 ("For example, a court may award attorneys' fees to a prevailing party as a means of punishing an opponent who acted in bad faith."). Bad faith "includes a broad range of willful improper conduct," including where counsel disrupts and hampers a current action "to gain an advantage" in another case. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *In re Itel Securities Litigation*, 791 F.2d 672 (9th Cir. 1986)). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" *Id.* Such a finding and award of fees and costs should be made in this case.

## CONCLUSION

For the foregoing reasons, this suit should be dismissed, in its entirety and with prejudice, for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3), and judgment on the pleadings should be granted under Rule 12(c). The Court should also issue an equitable award of fees and costs, to Takeda, incurred in defending against this action since Plaintiffs executed the Releases (Exs. A-D).

1

Dated: December 18, 2017          Respectfully submitted,

2

**NORTON ROSE FULBRIGHT US LLP**

3

4

5

By*/s/ D'Lesli M. Davis*
　　D'Lesli M. Davis

6

　　(dlesli.davis@nortonrosefulbright.com)
　　2200 Ross Avenue, Suite 3600

7

　　Dallas, Texas 75201
　　Tel: 214-855-8221

8

　　Fax: 214-855-8200

9

　　Darryl Anderson
　　(Darryl.anderson@nortonrosefulbright.com

10

　　1301 McKinney, Suite 5100
　　Houston, Texas 77010

11

　　Tel: 713-651-5562
　　Fax: 713-651-5246

12

*Attorneys for Defendant*
　　TAKEDA PHARMACEUTICALS

13

　　AMERICAN, INC., et al.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On **December 18, 2017**, I served the following: **TAKEDA'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(b)(1), 12(h)(3), AND 12(c) AND REQUEST FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by:

(X)  **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list. A copy of the "Filing Receipt" page will be maintained with the original document in our office.

(X)  I declare that I am employed in the office of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **December 18, 2017**, at Los Angeles, California.


*/s/ Britteena Stafford*
Britteena Stafford

DOCUMENT PREPARED ON RECYCLED PAPER